THE BANK OF THE UNITED STATES *against* SILL ;

IN ERROR.

In declaring upon a simple contract, a *profert* is not necessary.

If an instrument be lost to the party, in consequence of an irregular or defective
transmission by mail, it is a sufficient excuse for its non-production, and a
ground for the admission of secondary evidence.

Where the holder of a bank bill voluntarily cut it in two, for the sole purpose
of transmitting it by mail, with greater safety ; it was held, that this act did
not affect his rights upon such bill.

To entitle a party to recover on the production of only one of the parts of a di-
vided bank bill, he must shew, that he is the owner of the whole, and account
for the absence of the other part.

The parts of a divided bank bill are not separately negotiable.

Where the board of directors of the bank of the *United States* gave notice, that

*New-London,*
July,
1823.

Bank of U. S.
*v.*
Still.

the bank would not hold itself responsible upon any of its notes, which should be voluntarily cut into parts, except on the production of all the parts; which was published in all the newspapers printed in the city of *Philadelphia*; it was held, that the rights of a person in *Connecticut*, who subsequently became the owner of a note so cut into parts, and the possessor of one of the parts, were not affected by such notice, because the bank could not prescribe terms to its creditors, and because actual notice to the holder could not be presumed.

Pursuant to the advice given by this Court, at the last term, a *respondeas ouster* was awarded; and the cause was tried before the superior court, *October* term, 1822, on the plea of *non-assumpsit :* when the jury returned a special verdict, containing the following statement of facts. On the 1st of *January,* 1817, the defendants, at *Philadelphia,* made and issued their promissory note, commonly called a bank bill, signed by *William Jones,* their president, and countersigned by *Jonathan Smith,* their principal cashier, promising to pay to *C. S. West,* or bearer, on demand, one hundred dollars; of which the plaintiff, on the 4th of *December,* 1819, became the lawful bearer. For the purpose of transmitting this bill safely, by mail, from *Harpersfield,* in the state of *Ohio,* to *Lyme,* it was divided, by *Robert Harper,* the agent of the plaintiff, who held it as the plaintiff's property; and one half was enclosed in a letter, directed to the plaintiff at *Lyme,* which was deposited in the post-office at *Harpersfield,* and was, on the 10th of *January,* 1820, received by the plaintiff. On the 12th of *February,* 1820, *Harper* enclosed the remaining half of the same bill, in another letter, directed to the plaintiff at *Lyme,* and deposited it in the post-office at *Harpersfield,* which was duly mailed, and forwarded by the post-master at *Harpersfield,* but never arrived at the post-office in *Lyme,* nor was it ever received by the plaintiff, but was lost to him. On the 15th of *May,* 1820, the plaintiff, having in his possession the first-mentioned half, and being the lawful owner of said bill, presented such half to the defendants, and demanded payment of the bill, according to its tenor, and gave notice and offered proof of the facts before stated. The defendants refused to pay the bill, on any other terms than the production of both halves of it; and have never paid it.

On the 24th of *August,* 1819, the board of directors, at their legal and regular meeting, at their banking-house in *Philadelphia,* passed the following order:

"*Bank of the United States, August,* 24, 1819. The frequent demands made upon the bank, for the payment of its notes, on production of half notes, alleging the loss of the

*New-London,*
July,
1823.

Bank of U. S.
*v.*
Sill.

corresponding halves, and the liability to imposition and fraudulent practices, to which it is exposed, by paying such claims ; from which, it is advised, it cannot be duly protected, by any evidence, which may accompany such claims, or any security which may be given to indemnify it ; render it necessary to refuse payment of such demands. They grow out of the voluntary act of the party, who separates the parts of the notes ; and he alone ought to bear the inconveniences and losses consequent upon the act. But as the practice, however improper, has been a common one, and the bank is unwilling, without apprizing the public of its intention, to withhold even a questionable claim upon it ; these demands will be met as usual heretofore, until the 1st of *November* next. But notice is hereby given, that the bank of the *United States* will not, after the 1st of *November* next, hold itself responsible upon any of its notes, which shall be voluntarily cut into parts, except on the production of all the parts. By order of the board of directors.

*Jonathan Smith,* Cashier."

This notice the bank caused to be published in all the public newspapers printed in the city of *Philadelphia,* for three weeks successively, before the plaintiff's bill was divided ; but none of such papers were received by the plaintiff, or circulated in the town of *Lyme.*

Upon these facts the superior court rendered judgment for the plaintiff to recover the amount of the bill, with interest from the time he demanded payment of the bank. The defendants thereupon brought the present writ of error.

*Daggett* and *Law,* for the plaintiffs in error, contended, 1. That it did not appear from the facts found, that the part of the bill alleged to be lost, was so lost or destroyed as to bring it within the principle allowing secondary evidence to supply the want of *profert.* As a general rule, whenever a party seeks to recover on a written instrument, it is necessary to lay a *profert,* and produce the instrument. *Anon.* 2 *Atk.* 61.— To this rule two or three exceptions have been admitted ; one is, where the instrument is in the possession of the adverse party, who refuses to produce it after a reasonable notice ; another is, where the instrument is lost or destroyed. 1 *Phill. Evid.* 346. To bring the case within the latter exception the party must shew, first, that the instrument was *in fact* lost or destroyed ; and secondly, that such loss or destruction was not through his own gross negligence, or voluntary act.

*New-London,*
July,
1823.

Bank of U. S.
*v.*
Sill.

First, it does not appear, that the instrument in question was in fact lost or destroyed. All that the verdict finds, is, that it was put into the post-office in *Ohio,* and has not been received at the post-office in *Lyme.* It may now be in the general post-office ; or in some one of the deputy post-offices ; or floating from office to office. The proof of loss does not come up to the proof, which has been required, in other cases, in order to let in secondary evidence. *The King* v. *The Inhabitants of Castleton,* 6 *Term Rep.* 236.

Secondly, the loss, if any, has been occasioned by the voluntary act of *Sill's* agent. This is explicitly found by the jury, and will not be disputed. Can the party, then, avail himself of his voluntary act, as an excuse for not producing the original ? The strictness of the law with regard to the alteration of deeds, is familiar. The alteration of a bill of exchange, by the holder, equally avoids the instrument. *Masters* & al. v. *Miller,* 4 *Term Rep.* 320. If the payee of a note given by *A.* and *B.* voluntarily tears off the name of *B.,* can he recover on such note against *B. ?* If payment of a private note cannot be enforced, on the production of a part of the instrument, mutilated by the party himself, there are much stronger reasons why such an institution as the bank of the *United States* should not be subjected to the danger and inconvenience of such a claim. Its bills are scattered over the nation, and are receivable in all payments to the *United States. Chart. sect.* 14. The duty on receivers of public money to take them in payment, is as imperative as the duty upon the bank to pay them in gold and silver. Yet it will hardly be contended, that the receivers of public money are obliged to take *half* a bill. It is as true in relation to this subject as in physics, that a part is not the whole. If it were otherwise, a recovery might be had upon *each* part, which should come into the hands of a *bona fide* holder. *Mayor* & al. v. *Johnson* & al. 3 *Campb.* 324.

2. That even if the defendants below were liable to pay cut notes before, they were not liable after they passed and published the notice recited in the verdict. Among the powers given to the corporation, by the charter, (*sect.* 7.) is that of establishing and putting in execution " such by-laws, and ordinances and regulations, as they shall deem necessary and convenient for the government of the said corporation." Of the necessity and convenience of a regulation the directors are the proper judges, subject to legal revision. The publication in all the newspapers printed in *Philadelphia* was reasonable notice, and is bind-

*New-London,*
*July,*
*1823.*

Bank of U. S.
*v.*
Sill.

ing upon every one.    This would be sufficient evidence of notice of the dissolution of a partnership.

*Goddard* and *Waite*, for the defendant in error, contended, 1. That this action not being founded on a deed, the plaintiff below was not obliged to make a *profert* of the bill.

2. That if the instrument had been such as to render a *profert* generally necessary, an allegation of loss in the declaration would supply the place of a *profert*.

3. That in either case, proof of loss would let in secondary evidence of the contents of the bill.

4. That the verdict not only detailed the evidence of loss, but expressly found the fact, that the bill " was lost to the plaintiff."

5. That the circumstance that the bill was *voluntarily* cut, in consequence of which the loss happened, made no difference in the case, as it was so cut, not with a view to its destruction as an instrument, but to its preservation.

6. That the bank cannot be subjected to double payment of a bill, in consequence of having paid the whole amount to the owner, on the production of one half, and proof of loss of the other ; as there can be but one owner of a bill, and the possessor of the other half can never establish his claim, through defect of title.    Besides, a person who takes half a bill, though ever so innocent, takes it under suspicious circumstances ; and, for that reason, cannot recover on it.    Again, the half of a bill is not a negotiable instrument ; and the possessor cannot maintain an action upon it, as *bearer*.

7. That the notice given by the bank, was of no avail ; first, because the bank could not affect the rights of the holders of its bills, by any declaration it might make ; secondly, because there is no proof, nor reasonable presumption, that the notice reached the plaintiff below.

In support of the principal points above stated, the counsel cited and relied on the case of *Martin* v. *The Bank of the United States*, before the circuit court of the *United States* for the Eastern district of *Pennsylvania*, *October*, 1821.

PETERS, J.    The plaintiffs in error contend, 1. That the facts alleged and found, are not a sufficient foundation for the admission of secondary evidence, to supply the want of a *profert*.    2. That the loss or destruction of the bill proceeded from the voluntary act of the defendant in error.    3. That the plain-

New-London,
July,
1823.

Bank of U. S.
v.
Sill.

tiffs in error are not liable, in any event, after the publication of their determination not to pay "cut notes," unless all the parts are produced.

As to the first exception, it is a well settled rule, that in declaring upon simple contracts, a *profert* is not necessary; and its omission is a mere matter of form, and can be taken advantage of only by a special demurrer. 1 *Swift's Dig.* 675. 1 *Chitt. Plead.* 349. *Salisbury* v. *Williams*, 2 *Salk.* 497. An excuse for the omission is, therefore, unnecessary. But an excuse has been alleged and found; was this sufficient to introduce secondary evidence? If it was improperly admitted, the remedy is a motion for a new trial. It is no ground for error. 3 *Day*, 29.

But it is said, that the bill is not lost or destroyed, but only *mislaid.* In *Beckford* v. *Jackson*, 1 *Esp. Rep.* 337. the plaintiff counted on a deed as "lost or mislaid," upon which, issue was taken; and the same was recognized by Lord *Kenyon*, as warranted by law; and by the court for the correction of Errors in *New-York*, (*Livingston* v. *Rogers*, 1 *Caines' Cases in Error* xxvii.) proof by a witness, that the paper in question was thrown aside as useless, and that he believes it lost or destroyed, will be sufficient to let in secondary evidence. 1 *Phil. Evid.* 347. & seq. *Rex* v. *Johnson*, 7 *East*, 66. *Kensington* v. *Ingliss* & al. 8 *East*, 273.

2. It is said, that the loss or destruction of the bill proceeded from the voluntary act of the defendants.

When the holder of a bill voluntarily and intentionally destroys it, or alters it fraudulently, he has no remedy; but if he loses, cancels, alters, or destroys it, by accident or mistake, his rights are not affected; his evidence only is impaired. A bill or note is not a debt; it is only primary evidence of a debt; and when this is lost, impaired or destroyed *bona fide*, it may be supplied by secondary evidence. Was this bill divided and put into the post-office, with a view to abandon or destroy it, or to defraud the bank? The verdict expressly finds, that this was done solely for the purpose of transmitting it from *Ohio* to *Connecticut* by mail, the most usual, safe and expeditious mode of remittance. The act was, indeed, voluntary; but the intent was to *preserve*. Where, then, is the evidence of voluntary, negligent or fraudulent loss, or destruction of the bill?

But it is contended, that the bank is equally liable to the *bona fide* holder of the other moiety. This would be true, if the moiety of a bill were negotiable. Cases innumerable are found

in the books, where a party may recover, who has lost the primary evidence of his claim; but not, if it be negotiable, unless it be destroyed.  1 *Phill. Evid.* 347. & seq.—and cases there cited.  For, the *bona fide* receiver or holder of negotiable paper without notice, is always safe.  *Miller* v. *Race*, 1 *Burr.* 452. But *a part* of a bill is not negotiable; and the holder cannot recover upon it, without proving a title to all the parts.  In the present case, the plaintiff is the possessor and bearer of one moiety, and proves himself the owner of the other;  which the possessor or bearer of the last moiety can never do.  He must have received it with notice, that the other moiety belonged to somebody else; and taken it, not on the credit of the bank, but of the bearer, to whom alone he can look for indemnity.  Of all the authorities, which have been cited, by the plaintiffs' counsel, one only is in point; for the case of *Master* & al. v. *Miller*, 4 *Term Rep.* 320. so much relied on, has no bearing on the case.  It was an action by the indorsees, against the acceptor of a bill, the date of which the jury found, had been altered after acceptance, while in the hands of the payees, so as to accelerate the time of payment; and the court, very properly, adjudged it void.  But the case of *Mayor* & al. v. *Johnson* & al. 3 *Campb.* 324. is *directly in point.*  In that case, judgment was rendered for the defendant, by Lord *Ellenborough*, on the ground, that the last half of a bank bill was negotiable, and would enable a *bona fide* holder to recover of the bank; which, with all due deference to an illustrious judge, I am bound to say, is not law.  As well might a *vignette*, or any other fragment torn from a bill, be considered negotiable.  The only apology, I can make for his lordship, is, that he was on the circuit, where business is done in haste, without time and means for investigation and consideration, and where the greatest judges frequently err.  " *Quandoque bonus dormitat Homerus.*"

3. The last exception is as extraordinary as it is novel;  and is probably the first instance of a debtor's undertaking to *prescribe terms* to his creditors.  It is a sufficient answer to this objection, that their notice never came to the knowledge of the defendant in error, though it was published in the *Philadelphia* newspapers, at the distance of two hundred miles.

All the questions presented by this record, have been repeatedly decided, by *American* courts;  and the case of *Mayor* & al. v. *Johnson* & al. has been expressly overruled.  In *Patton* v. *State Bank*, and *Idem* v *Bank of South Carolina*, on a similar state of facts, the constitutional court of *South Carolina* decided,

that the cutting or severing of a bank bill destroyed its negotia-bility ; that the *bona fide* holder of a part, who owns the whole, can enforce payment ; and that the bearer of a part only, has no claim on the bank, because he cannot prove title to all the parts, and he receives it with his eyes open. 2 *Nott & McCord's Rep.* 464. In *Armat* v. *Union Bank*, 16 *Niles' Register*, 360, the circuit court for the district of *Columbia*, decided, that the half of a bank bill is not negotiable ; and that the holder of a part, owning the whole, is entitled to recover. And in a more recent case, *Martin* v. *Bank of the United States*, circuit court, *Penn.* district, *Oct.* 1821, upon the precise statement of facts contained in the verdict in question, Judges *Washington* and *Peters* (b) rendered judgment for the plaintiff, not in the hurry of a *nisi prius* trial, as has been suggested in argument, but upon a solemn review of all the cases on this subject, especially of a previous decision of their own, and of *Patton* v. *The State Bank.* With these decisions, I entirely concur ; and am, therefore, of opinion, that there is no error in the judgment complained of.

CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

HOSMER, Ch. J. declined giving any opinion.

Judgment affirmed.

(b) Vide *National Gazette, January* 19. 1822.