## BAGLEY v. ADMINISTRATORS OF McMICKLE, EATON, et al.

It is not a matter of course to allow secondary evidence of the contents of an instrument in suit upon proof of its destruction. If the destruction was the result of accident, or was without the agency or consent of the owner, such evidence is generally admissible. But, if the destruction was voluntarily and deliberately made, by the owner, or with his assent, the admissibility of the evidence will depend upon the cause, or motive of the party in effecting or assenting to the destruction.

The object of the rule of law which requires the production of the best evidence of which the facts sought to be established are susceptible, is the prevention of fraud; for, if a party is in possession of this evidence, and withholds it, and seeks to substitute inferior evidence in its place, the presumption naturally arises, that the better evidence is withheld for fraudulent purposes which its production would expose and defeat.

When it appears that this better evidence has been voluntarily and deliberately destroyed, the same presumption arises, and unless met and overcome by a full explanation of the circumstances, it becomes conclusive of a fraudulent design, and all secondary or inferior evidence is rejected. If, however, the destruction was made upon an erroneous impression of its effect, under circumstances free from suspicion of intended fraud, the secondary evidence is admissible. The cause or motive of the destruction is then the controlling fact which must determine the admissibility of this evidence in such cases.

The facts and circumstances of the destruction must be shown, in the first instance, to the Court, to enable it to judge of the propriety of admitting or refusing the secondary evidence. The same principle which allows the parties to prove by their own testimony the destruction, must necessarily allow them to prove all such facts and circumstances as are requisite to the introduction of the secondary evidence.

The naked fact of voluntary destruction, without explanation, is held such presumptive evidence of fraudulent design as to preclude all secondary evidence.

The preliminary proof is addressed to the Court, and of its sufficiency the Court is the sole judge.

The secondary evidence being admitted, it becomes the province of the jury to judge of its credit and weight. It takes the place of the primary evidence, the absence of which has been explained to the satisfaction of the Court, and is entitled to the same consideration.

The terms "has executed unto," when applied to instruments of writing, import both making and delivery.

Per Burnett, J.—Quære: Whether affidavits are admissible to prove the destruction of notes, when the plaintiff, and his witness and co-payee can be examined in open Court.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

This action was commenced on the fourth of April, 1855, by the

appellant, against the respondents, on three promissory notes ma le and delivered by G. C. McMickle, deceased, to Bagley and Sinton, and by them assigned to Bagley. On the death of Mc-Mickle, the claim, duly verified, was presented to the administrators of his estate, and rejected, and suit brought within three months thereafter.

The answer contains five different defences:

1. A general denial.
2. The Statute of Limitations of four years.
3. Payment and satisfaction.
4. That on May 1st, 1850, Bagley and Sinton agreed with the intestate to sell him a lot in San Francisco for $14,000, on which he paid them, up to the 22d March, 1851, $8,400, on which day the parties settled and entered into an agreement, in writing, setting forth the notes sued on, as the balance of the purchase-money due, but that the liability of McMickle was limited, and that it was provided that if the notes were not paid the intestate was not to be holden, but the lot to become forfeited to Bagley and Sinton, and they were to accept it in full discharge of the notes; that the notes were not paid, and that Bagley and Sinton did accept the lot, and sold it to other persons, and so discharged the notes.
5. That the notes were without consideration, and void.

Note—as to the second plea—the action was commenced fourth April, 1855.

The fourth plea is, the defendants' legal construction of the instrument hereafter shown in the evidence, and determined to be an erroneous construction by the Supreme Court.

The case has been tried three times in the Fourth District Court—the last time at the August Term, 1857, before the Court and jury.

On the trial, the plaintiff's counsel read to the Court, for the purpose of laying the foundation for the introduction of secondary evidence of the notes sued on to the jury, the following affidavits, viz. :

" David T. Bagley, the plaintiff in the above entitled suit, being duly sworn, says: On the twenty-second day of March, A. D. 1851, Grove C. McMickle made and delivered to the firm of Bagley & Sinton three promissory notes of that date, described and referred to in a certain instrument in writing of that date, signed by this plaintiff, and R. H. Sinton and Grove C. McMickle, and acknowledged before J. P. Haven, notary public; that said notes remained in the possession of said Bagley & Sinton for some time after their maturity, and that, in the demand for the same, said Bagley & Sinton had been very lenient and indulgent to said McMickle, and had resorted to no legal proceedings to collect the same; and that said McMickle, having repeatedly requested said

firm not to sell or negotiate said notes, and fearing a negotiation to some person who might be more vigorous in the collection of the same, the parties altogether, viz., said Bagley, Sinton and McMickle, consented and agreed that said notes, for the sole purpose of preventing their negotiation into the hands of some other party, or of their getting into the market, might be destroyed, and believing, also, that the rights of the parties would remain the same as before the destruction; and the said notes were then and there, to wit., about the fifteenth day of August, A. D. 1852, torn up into small pieces and thrown away, in the presence of all the parties. That said destruction was done for the purpose aforesaid, and by the agreement of the parties was not to affect the right of the said Bagley & Sinton to recover on said notes, and with full intent on the part of all the parties, that the rights of the parties should be as if the notes continued to exist."

"Richard H. Sinton, being duly sworn, deposes and says: That on the twenty-second day of March, A. D. 1851, Grove C. Mc-Mickle made and delivered to the firm of Bagley & Sinton (then composed of the plaintiff and this affiant,) three promissory notes of that date, being the same referred to and described in a certain instrument of writing of that date, executed in duplicate by said Bagley and said McMickle, and this affiant, under their respective hands and seals, and acknowledged by them respectively before J. P. Haven, a notary public, on the same day.   That said notes remained in the possession of said Bagley & Sinton for some time after their maturity, and that in the demand for the same said Bagley & Sinton had been very lenient and indulgent to said McMickle, and had resorted to no legal proceedings to collect the same, and that the said McMickle repeatedly urged said firm not to sell or negotiate the said notes, as he feared a negotiation to some person who might be more rigorous in the collection, and believing he had a claim for indulgence on said firm, and having a great objection to his paper being hawked about in the market—the parties altogether, to satisfy said Mc-Mickle, and to prevent a negotiation of said notes into the hands of some other parties, or their getting into the market, consented that the same might be torn up or destroyed, and, according to the best recollection and belief of this affiant, the same were torn up into small pieces, about the fifteenth day of August, A. D. 1852, and thrown away, in the presence and by consent of said Bagley & Sinton and said McMickle, but with the distinct understanding on the part of all, that the claim of said Bagley & Sinton on said notes against said McMickle should remain exactly as if said notes still existed, and that said Bagley & Sinton consented to the same only to satisfy said McMickle, as aforesaid, and with a full belief on their part that their claim on said notes was not affected thereby, and that the evidence of same, con-

tained in said instrument, of the date of twenty-second March, 1851, would fully prove the same, and be all that would be necessary to enforce their collection."

The plaintiff's counsel then offered in evidence to the jury, the following instrument in writing, to wit:

"Know all men by these presents: That we, David T. Bagley and R. H. Sinton, composing the firm of Bagley & Sinton, of San Francisco, are held and firmly bound unto G. C. McMickle, also of San Francisco, in the sum of twelve thousand dollars, lawful money of the United States of America, to be paid to the said McMickle, his heirs, executors, or assigns; for which payment, well and truly to be made, we hereby bind ourselves, our heirs, executors, and assigns, firmly by these presents. Sealed with our seals and dated this twenty-second day of March, A. D. eighteen hundred and fifty-one.

"Whereas, the said Bagley & Sinton, on or about the first day of May, A. D. 1850, did sell unto the said McMickle, for the sum of fourteen thousand dollars, a certain lot of ground in the city of San Francisco, situated on the northeast corner of Pacific and Kearny streets, the same measuring twelve and one-half varas on Pacific and thirty varas on Kearny street. Whereas, the said McMickle has paid at different times, of the above fourteen thousand dollars, the sum of eight thousand four hundred and twenty dollars, leaving a balance still due Bagley & Sinton, of five thousand five hundred and eighty dollars, which, together with one thousand dollars interest accrued, makes an aggregate due Bagley & Sinton this day of six thousand five hundred and eighty dollars. Whereas, the said McMickle has executed unto the said Bagley & Sinton three promissory notes, of even date with these presents, amounting, in the aggregate, to the last written sum—one of said notes being for the sum of two thousand dollars, payable thirty days after date—another for a like sum of two thousand dollars, payable sixty days after date, and the third and last for the sum of two thousand five hundred and eighty dollars, payable ninety days after date—each and all bearing interest at the rate of five per centum per month from date:

"Now the condition of this obligation is such, that if the said McMickle shall well and truly pay to the said Bagley & Sinton, or their assigns, the said notes, at maturity, then the said Bagley & Sinton agree and hereby bind themselves to execute to the said McMickle a quit-claim-deed of all their right, title, and interest, in and to the aforementioned lot of ground. But if the said McMickle shall make default in the payment of any one or all of the said notes, then the said McMickle is to forfeit all right or interest in the said lot of ground; and the said Bagley &

Sinton are hereby authorized to make such disposition thereof, discharged of all claim, or pretence of claim or interest in the same, on the part of the said McMickle, as they may see fit.

"In witness of all of which, the said David T. Bagley and R. H. Sinton for themselves, and the said G. C. McMickle for himself, have signed and sealed these presents in duplicate, at the city of San Francisco, this, twenty-second day of March, A. D. eighteen hundred and fifty-one.        "DAVID T. BAGLEY, [L. S.]
"Attest:        "R. H. SINTON,     [L. S.]
        "G. C. McMICKLE,   [L. S.]

"NOTE.—In fourth line from bottom, first page, the words 'payable ninety days after date,' are interlined and noted before signing.        "G. W. BAKER,
        "DANIEL J. THOMAS, JR."

"STATE OF CALIFORNIA,      } ss.
"County and City of San Francisco. }

"On this 22d day of March, A. D. 1851, personally appeared before me, a notary public, duly admitted and sworn, David T. Bagley, R. H. Sinton, and G. C. McMickle, known to me to be the persons described in and who executed the foregoing instrument of writing, who acknowledged that they executed the same freely, and of their own accord, for the purposes therein set forth.
        [L. S.]        "J. P. HAVEN, N. P."

It was then and there admitted, by the defendants' counsel in open Court, in the presence of the Court and jury, that the signatures to the foregoing instrument were genuine, and that the same was executed in duplicate, one part of which was then in the possession of the plaintiff, and one of the defendants, as the representatives of the intestate.

To the admission of this instrument in evidence to the jury, the defendants' counsel objected, but the Court overruled the objection, and permitted it to be read in evidence to the jury, which was done.

The assignment to the plaintiff was duly proven, and also the presentation of the sworn claim to the administrator, its rejection, and the bringing of the suit within three months thereafter.

It was also admitted by defendants' counsel, in presence of the Court and jury, that the defendants had made due publication as such administrators, calling in all claims against their intestate, within ten months after date of said publication, which time had expired; and that this claim had been presented within said ten months, by said Bagley and Sinton.

The defendants offered no evidence.    The Court instructed the jury, without being requested by either party, as follows:

"The bond is sufficient evidence of the making of the notes

therein described. The affidavits of plaintiff and Sinton are addressed to the Court for the purpose of accounting for the nonproduction of the notes sued upon, and laying the foundation for secondary evidence, and are not evidence for the jury. These affidavits show that the maker of the notes peaceably acquired their possession, and destroyed them with plaintiff's consent. Under these circumstances, I feel it my duty to instruct you that there is no testimony to show there is any amount due upon the notes sued upon. This is the third trial of this case, but it is the first time that it has come up in this form; heretofore Sinton was introduced by plaintiffs as a witness, and explained the delivering of the notes to the maker.

"I can only regard the affidavits as in evidence to satisfy the Court the notes can not be produced upon this trial, and to authorize secondary proof of their contents; but as they trace the notes to the possession of the maker, and disclose that they were destroyed by him with plaintiff's consent, it raises no presumption that they were unpaid in whole or in part; but on the contrary, regarding the affidavits only as proving the destruction in the manner disclosed—by the maker, with the consent of the owners—it raises a presumption in favor of the former, which plaintiff is bound to explain by additional evidence. The affidavits themselves contain an explanation, but in this respect they go beyond their true purpose. Defendants had no opportunity to cross-examine the affiants, and this Court can not give any greater force and effect to the affidavits, than was asked for them when they were introduced, and there is no proof to rebut the presumption in favor of the deceased maker of the notes.

"If plaintiff can and should recover upon the testimony as it now stands, then any person who pays a note, takes it up and destroys it, may be compelled to pay it a second time if he is not prepared to defend by proof of actual payment. Merely taking up his note nnd destroying it would be no protection if the then holder could, as the plaintiff here has attempted to do, compel him afterwards, by bringing suit and making affidavit as in this case, to show an actual payment. To establish such a principle of law, would not only be dangerous, but also be taking away what has been regarded the best and most ordinary protection and safeguard that a party has when he makes payment of obligations of this kind. There is no evidence to warrant a general verdict for the plaintiff for any amount of money due plaintiff."

The jury found in favor of defendants under these instructions. Plaintiff moved the Court for a new trial, which motion was denied. Plaintiff appealed to this Court, and assigned as error the instruction of the Court.

*Hoge & Wilson* for Appellant.

1. The foundation for the introduction of secondary evidence may be made either by the party's own affidavit, or that of another person. McCann v. Beach, 2 Cal., 25, 29, 30, 31; Tayloe v. Riggs, 1 Peter' S. C. R., 596; Jackson v. Freer, 16 Johns., 193; Harris v. Doe, &c., 4 Blackf., 376; Dormady v. State Bank Illinois, 2 Scam., 44; Adams et al. v. Leland et al., 7 Pick., 62; 1 Greenl. Ev., § ,

The Judge of the Fourth District Court held that the affidavits were admissible to lay the foundation for secondary evidence. See, also, Well v. Martin, 1 Ohio, 389; 20 Johns., 145.

2. All the facts about the loss and the circumstances, motives, and objects of the destruction may be shown in affidavits. Writt.n instruments are most generally kept by the parties themselves, and, in most cases, it would be impossible to prove the destruction and its circumstances by disinterested witnesses. To require such proof would be, in most cases, a denial of justice. See McCann v. Beach, 2 Cal., 30.

" Parties and persons interested are recognized as competent witnesses in respect to the facts and circumstances necessary to lay a foundation for secondary evidence." 4 Phillips on Ev., being second part Cowen and Hill's Notes, 408; 3 ib., 50, and cases cited.

In Riggs v. Tayloe, 9 Wheat., 483, the circumstances of the destruction were detailed in the plaintiff's affidavit, and, among other things, it stated, " The plaintiff in this cause makes oath in relation to the memorandum of agreement between the defendant and himself relative to the stock in the declaration mentioned, that his impression is that he tore up the same after the transfer of the stock, believing that the statements upon which the contract had been made were correct, and that he would have no further use for the paper."

In Page et al. v. Page, 15 Pick., 368, a great many facts and circumstances are narrated in an affidavit of one of the plaintiffs, tending to show a loss.

So, also, in Livingston v. Rogers, 1 Ca. Cases, 28, and Jackson ex dem. Livingston v. Neely et al., 10 Johns., 374, and in Dumas v. Powell, 3 Dev., 103.

The very loss or destruction may be shown by the circumstances themselves, or inferred from facts stated. 4 Cow. & Hill's notes to Phil. on Ev., pt. 2, notes, p. 405, and cases cited; Taunton Bank v. Richardson, 5 Pick., 441; Patterson v. Winn et al., 5 Peters, 242.

" Believing the paper in question has been destroyed, has been deemed sufficient to let in secondary evidence." Riggs v. Tayloe, 9 Wheat., 483; 7 East, 66; 8 East, 284.

To hold that the party may show by his affidavit merely the destruction, but not the circumstances and facts to explain how

or wherefore destroyed, is to make a benign rule, and then so restrict it as to deprive it of all good.

In Blade v. Noland, 12 Wend., 173, the destruction was held fatal to a recovery, because the mere naked fact of destruction appeared. The Court said : " The proof is that the plaintiff deliberately and voluntarily destroyed the note before it fell due, and there is nothing in the case accounting for or affording any explanation of the act, consistent with an honest or justifiable purpose."

Again, in reviewing the cases, he says, p. 175 : " Where there was evidence of the actual destruction of it, the act was shown to have taken place under circumstances that repelled all inference of a fraudulent design." 2 Johns. Cas., 488 ; 3 Ca., 363 ; and other cases there cited.

In Riggs v. Tayloe, 9 Wheat., 483, the very circumstances under which the destruction was shown to have been made, by the plaintiff's own affidavit, enabled the plaintiff to give the secondary evidence.

In Adams et al. v. Leland, 7 Pick., 62, the preliminary proof to the Judge of the destruction of the documents about which the secondary evidence was offered, was made by one of the plaintiffs, and was not limited to the mere fact of destruction, but showed the circumstances under which it occurred, viz.: that it was " accidentally destroyed by fire."

In Taunton Bk. v. Richardson, 5 Pick., 436, the circumstances of the supposed destruction were set forth.

If the plaintiff's affidavit may be introduced, and is competent to lay the foundation for the introduction of secondary evidence, and if the circumstances of the destruction are an essential part of the preliminary proof of the Court, by what system of reasoning do we reach the conclusion that the plaintiff can show in his affidavits only the mere fact of destruction, and not also the circumstances under which destroyed ? If the preliminary evidence is to the Court, and may be made by the plaintiff, or any one else, in affidavits, to say that everything that is requisite to lay the foundation for the secondary evidence, cannot be shown in the affidavits, is a simple contradiction of terms. It is laying down admitted premises, and deducing a conclusion which only consists of a denial of the premises.

3. The preliminary proof, to lay the foundation for the introduction of secondary evidence, is addressed solely to the Court. The Court must first pass upon this question, before the secondary evidence can be admitted to the jury.

This has been somewhat referred to above. In 1 Greenl. Ev., § 558, it is said : " And the question, whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents, is to be determined by the Court, and not by the jury."

The same point is maintained in Page v. Page, 15 Pick., 368; Poignaud v. Smith, 8 Pick., 278; Riggs v. Tayloe, 9 Wheat., 483; 5 Cond. U. S. R., 647; 4 Cow. & Hill's notes to Phil. on Ev., 408; 3 Ibid., p. 60, note 50; Tayloe v. Riggs, 1 Peters, 597; Donelson v. Taylor, 8 Pick., 389–90; Jackson v. Freer, 16 John., 195.

Many of the other cases herein recited sustain the same point. The Court held the same thing in its instructions to the jury.

4. The District Court, after receiving the preliminary proofs, to lay the foundation for the introduction of secondary evidence, admitted the secondary evidence to go to the jury, though objected to by defendant's counsel.

The District Court admitted the same secondary evidence upon all the former trials.

Had the Court sustained the objection of defendants' counsel to the introduction of secondary evidence of the notes, because not satisfied, the plaintiff would have offered further preliminary proof. That he had other proof, is apparent from the former trials.

5. After the secondary evidence went to the jury, it was solely for the jury to determine the issues of fact on the evidence introduced before them.

"We think very clearly that the question whether secondary evidence should have been allowed or not, was for the Court and not for the jury to determine. The jury might as well be called upon to decide upon the competency of any other evidence as upon this. The Court must decide what is and what is not competent evidence to be laid before the jury. The rule is just as clear as is the rule that after the evidence is submitted, the jury are to be the judge of the credit and weight of it." Page v. Page, 15 Pick., 374.

"That a particular deed existed is a most material inquiry; the fact of its existence and the contents of the deed, are matters to be tried by the jury. The loss of it must be made out as a prerequisite to the satisfaction of the Court." Jackson v. Freer, 16 Johns. R., 193, 196.

See, also, Bean v. Keen, 7 Blackf., 152; Riggs v. Tayloe, 9 Wheat., 483.

In Tayloe v. Riggs, 1 Peters, 597–8, the same point was decided. The Court there say: "Secondary evidence having been properly admitted, and the transfer of the stock and payment of the purchase-money proved, the next inquiry is into its competency to establish the contract stated in the declaration."

6. The instructions of the Court to the jury were directly inconsistent with the prior decision admitting secondary evidence of the notes sued on; were erroneous, so far as the law was applied to the facts, and took the case entirely out of the hands of the jury.

This is manifest from the foregoing points and authorities.

The Court had no right to comment to the jury upon the preliminary proof which was addressed solely to the Court, except for one special purpose, and that was the very opposite of the purpose of the Court in this instance.

The case of Page et al. *v.* Page, 15 Pick., 368 to 375, was, like this, an action of *assumpsit* upon a promissory note. The affidavits of the plaintiffs were presented to the Court to show the loss of the note, and were ruled to be presumptive evidence of loss, and sufficient to let in evidence of its contents. The jury found a verdict for the plaintiffs under the instructions of the Court. On appeal to the Supreme Court, one ground contended for by appellant was " that the Judge who tried the cause ought not to have commented on the affidavit of Kelly Page, which had not been read to the jury in evidence, and stated that it furnished sufficient ground to rebut the presumption arising from the non-production of the note by the plaintiffs, that it had been paid to them, and without which there was no satisfactory evidence tending to prove that the note had not been paid to them after a period of five years."

When the Supreme Court came to speak of the comment of the Court below on the affidavit, they use this language : " The only commentary made on the affidavit was an explanation of the reason why the Court had admitted secondary evidence. It was entirely proper, as some of the jury, without such an explanation of the rule of law touching secondary evidence, might have hesitated to give a verdict upon a note which was not produced. The whole charge, it seems to us, was unexceptionable upon that point."

How different was the view of the District Judge from the Supreme Court of Massachusetts ! He commented on the affidavits to tell the jury " that there was no testimony to show there was anything due upon the notes sued on," though he also says the affidavits were sufficient " to satisfy the Court that the notes could not be produced on that trial, and to authorize secondary proof of their contents."

The Court then tells the jury the contents of the affidavits, which were addressed solely to him, and about which it is expressly said in the charge that they " are not evidence for the jury," and then states to the jury that " it raises a presumption in favor of the former, (that is, McMickle, the maker of the notes,) which plaintiff is bound to explain by additional evidence;" and again, in another part of the charge, says : "And there is no proof to rebut the presumption in favor of the deceased maker of the note."

This " presumption," according to the charge, arises from the affidavits. The affidavits were not before the jury. How could the plaintiff be bound to rebut this presumption by " additional

evidence," when neither the presumption nor the fact out of which it arose, was before the jury?

It could not be that the "additional evidence" was to be introduced to the Court, because he had already passed on all the evidence addressed solely to him, and had been satisfied, and had permitted the plaintiff to introduce his secondary evidence to the jury.

The "presumption" did not arise from the secondary evidence. It could not arise from the non-production of the notes sued on. The case of Page et al. *v.* Page, 15 Pick., pp. 374–5, is too good sense and too good authority for that.

With all due deference to the Court below, we must say this is a most palpable error of law.

The reasoning of the Supreme Court of New York, in Jackson *v.* Betts, 9 Cow., pp. 222–3, is so clear on this question, that we may be excused for extracting the following. The question there was on secondary evidence of a lost will, and on its effect when introduced:

"Let the question be examined on principle. The plaintiff is required to prove the will of the testator, and produce it, or show legal grounds for the dispensing with the production of the original. If the facts proved are such as the law sanctions, and excuse the production of the will, then the copy or contents of the will, proved, necessarily stand in the place of the original, and have the same legal effect. This principle is familiar in the case of all written instruments. If the original is lost or can not be found, you may resort to secondary evidence; and if that is sufficient, it supplies the place of the paper lost, or which can not be found. In these cases, was it ever urged as an objection, that after full proof of the contents, undisputed and unquestioned, a party was not entitled to all the benefits that would have arisen had the original been produced?"

That case was afterwards reversed in the Court of Errors, but not on any ground that affected this reasoning or these principles. It was reversed because the will was presumed, under the circumstances, to have been revoked; it therefore had no legal existence as a will, and, of course, there could be no secondary evidence of what never existed. Jackson ex dem. Brown *v.* Betts, 6 Wend., 173. But, as to the effect of secondary evidence of an instrument once shown to have existed, the principle and reasoning of 9 Cow., 223, are beyond contest. We ask the counsel for respondents, in the language of that case: "In these cases was it ever urged as an objection, that, after full proof of the contents, undisputed and unquestioned, a party was not entitled to all the benefits which would have arisen had the original been produced? We are not aware that any such objection has ever been sustained, or even raised," excepting always this case.

The conclusion of the charge of the District Court to the jury took the case entirely out of their hands. It left the jury nothing to do but to find a verdict for the defendants, yet the proof was most unquestionably before them of the former existence of the notes, of their contents, of their execution, by the intestate to the plaintiff and Sinton, and the assignment by Sinton to the plaintiff. No evidence was offered by defendant.

In the charge to the jury the District Court comments upon the great inconvenience of the doctrine we contend for. He says: "If a party can and should recover, upon the testimony as it now stands, then any person who pays a note, takes it up, and destroys it, may be compelled to pay it a second time, if he is not prepared to defend by proof of actual payment." This is a most remarkable thing to say to a jury. It is not instruction, it is mere argument. But let us examine it. How does the danger in this case differ from the danger in Riggs v. Tayloe, 9 Wheat., 483; S. C., 1 Peters, 596; Page v. Page, 15 Pick., 368; or the cases cited in 4 Cow. and Hill's notes, to Phil. on Ev., pt. 2, notes, p. 405.

The danger apprehended, is to a man who pays his note and takes it up and destroys it, and has no proof of payment. Well, what is the danger? It is of course perjury, "which the law will not presume and can in no instance guard against," as Judge Washington says, in Martin v. Bank of the United States, 4 Wash. C. C. R., 256. "If," said he, "upon any other ground than fraud or perjury, the maker of the lost note may, by possibility be twice charged, the law will not expose him to that risk by relieving the owner of it, not because there may be imposition in the case, or the debt ought not to be paid, but because the proof that the claimant is the owner of the debt is defective," etc.

*Glassel & Leigh* for Respondents.

The question is whether, in an action upon a promissory note, under the general issue of a plea of payment, secondary prooof of the execution and contents of the note is sufficient, *per se*, to sustain the action?

To determine this question, it is requisite to ascertain what proof is necessary to sustain an action upon a promissory note.

In Phillips on Evidence, 3 Lond. ed., vol. 2, p. 2, the law on this subject is thus stated:

"The plaintiff, in an action of *assumpsit* on a promissory note or bill of exchange, will have to prove, under the general issue:

"1. That the note or bill is either in express terms, or in its legal effect, the same as described in the declaration.

"2. That he has an interest in the note or bill, as payee, endorsee, or in some other character.

"3. That the defendant, as the pleadings allege, has become a party to the note or bill; and

"4. That the defendant has not performed his contract."

See, also, Chitty on Bills, 451; 2 Greenleaf on Evidence, § 155, et seq.

The mere production of the note, with proof of its genuineness, furnishes the necessary proof on all these points.

The contents of the note prove that the note is, either in express terms or in its legal effect, the same as described in the declaration.

The fact of the execution or endorsement of the note to the plaintiff, and his possession of it, proves, *prima facie*, his interest in it.

The defendant's signature to the note proves that he has become a party to the note as maker or endorser; and the fact that the note is outstanding, proves, *prima facie*, that the defendant has not performed his contract i. e., has not paid the note. See Story on Promissory Notes, § 106; Brembridge *v.* Osborne, 1 Stark, 374; 2 Eng. C. L., 433.

On the other hand, what is proved by secondary evidence of the execution and contents of the note?

1. The contents of the note prove that it is, either in express terms or in its legal effect, the same as described in the declaration.

2. The fact of the execution or endorsement of the note to the plaintiff, proves his interest in it at the time of such execution or endorsement.

3. The fact of the execution or endorsement of the note by the defendant proves that he was a party to it at the time of such execution or endorsement; and,

4. The secondary evidence wholly fails to prove that the defendant has not performed his contract; i e., has not paid the note

For aught the secondary evidence proves, the defendant may have paid the note, or may have been released from his liability upon it.

It is a self-evident absurdity, that proof of the making of a promise is, also, proof of a breach of promise; that proof that McMickle once promised to pay Bagley & Sinton a certain sum of money is, also, proof that he never did pay them that sum of money.

From what we have said, it is, we think, clear, that in an action upon a promissory note, under the general issue and a plea of payment, whilst the mere production of the note, with proof of its genuineness, is sufficient to sustain the action, secondary proof of the execution and contents of the note is not, *per se*, sufficient to sustain the action.

The counsel for the appellant contend, on the contrary, that

when admitted, secondary proof of the execution and contents of a promissory note, is, to all intents and purposes, equivalent to the production of the note itself, with proof of its genuineness.

In support of this proposition, see Jackson ex dem. Brown *v.* Betts, 9 Cow., 222–3.

Secondary proof of the execution and contents of a deed or will, when properly admitted, is equivalent to the production of the deed or will itself, with proof of its genuineness.

But such is not the law in the case of all written instruments. It is not the law in the case of a promissory note.

And this difference is the necessary consequence of the difference between the nature of a deed, or a will, and that of a promissory note.

A deed or a will once in effect, continues in effect forever; and it is wholly immaterial into whose possession it may come.

A promissory note, on the contrary, is presumed by the law to be unpaid or paid, as it is or is not, outstanding.

In the one case the inquiry is whether the instrument was ever in effect; in the other, the inquiry is whether the instrument is now in effect.

In consequence, secondary proof of the execution and contents of a deed or will, proves all that the deed or will itself would prove if produced, with proof of its genuineness; whilst secondary proof of the execution and contents of a promissory note does not prove all that the note itself would prove, if produced, with proof of its genuineness, for it does not prove that the note is outstanding, which the production of the note would prove.

After all, perhaps, the reasoning quoted, rightly construed, is limited to the case of a deed or will. If so, we do not gainsay it. But, in that case, it has no bearing on the question under consideration.

The counsel for the appellant ask us, in the language of the quotation, " In these cases was it ever urged as an objection, that, after full proof of the contents. undisputed and unquestioned, a party was not entitled to all the benefits that would have arisen had the original been produced?"

The sole authority cited by the counsel for the appellant upon this point, is itself a case in which the objection was not only urged but sustained.

The case of Page et al., Executors, *v.* Page, 15 Pick., 368, was an action of *assumpsit* by executors upon a promissory note alleged to be payable by the defendant to their testator.

At the trial, before Shaw, C. J., the note was not produced.

Upon the affidavit of both of the plaintiffs to the effect that the note had never been in their possession, and the affidavit of one of the plaintiffs to the effect that, after due search, the note

could not be found, the Court permitted secondary evidence of the note to be introduced.

The decision in this case involves, we think, these propositions:

1. The non-production of a promissory note by the party claiming under it, raises a presumption that it has been paid.

2. The affidavit of a plaintiff, that after due search the note can not be found, is sufficient preliminary proof to the Court to let in secondary evidence to the jury of its existence and contents.

3. Upon the evidence before them concerning the note, the jury are to determine whether the presumption of payment arising from the non-production of the note is rebutted by that evidence..

That the decision involves the first and second of these propositions will not, we presume, be questioned. That it involves the third, also, is to our minds equally clear.

The evidence introduced before the jury by the plaintiffs tended to prove not only the execution and contents of the note, but that it had not been paid.

After the introduction of this evidence, one of the grounds of the defence before the jury was, that the note had been paid; and the defendant offered no evidence upon this point, relying upon the presumption of payment arising before the jury from the non-production of the note.

The jury were instructed that if they should believe, upon the evidence before them, that the note had not been paid, that evidence would be sufficient to rebut the presumption of payment arising before them from the non-production of the note.

One of the grounds on which the defendant moved for a new trial was, that the Judge who tried the cause commented on the affidavit of one of the plaintiffs, which had not been read in evidence, and stated to the jury that it furnished sufficient evidence to rebut the presumption of payment arising from the non-production of the note.

In fact, the Judge did not state to the jury that the affidavit furnished any evidence whatever to rebut the presumption of payment arising from the non-production of the note; he merely said that the affidavit was sufficient to let in secondary evidence of the existence and contents of the note. This comment upon the affidavit was only an explanation of the reason why the secondary evidence was admitted.

The confessions of the defendant that he had the possession of the note after the death of the testator, that it was due, and that he was ready to pay it, together with the evidence which the defendant produced to contradict those confessions, were

submitted to the jury to determine upon the defence of payment set up by the defendant.

These circumstances leave not the least doubt that the decision involves the third proposition.

In this case, therefore, after full proof of the execution and contents of the note, undisputed and unquestioned, it was urged as an objection that the party was not entitled to all the benefits that would have arisen had the original been produced, and the objection was sustained by the instruction to the jury, that such proof of the execution and contents of the note was not sufficient to entitle the plaintiff to recover without additional evidence before them to rebut the presumption arising from the non-production of the note.

And it is, consequently, a direct authority that in an action upon a promissory note, under the general issue, and a plea of payment, secondary proof of the execution and contents of the note is not, *per se*, sufficient to sustain the action.

The case of Bailey *v.* Gould, Walk. Mich., 478, was a suit in equity to foreclose a mortgage. The bill set up a note, and a mortgage to secure its payment. The answer, in effect, denied the making of the note and mortgage, and called for proof of those facts among others. A replication was filed; and testimony was taken by both parties. On the hearing, upon the pleadings and proofs, Manning, J., said, on this point:

"The promissory note is not in evidence, and, for aught that appears in the testimony, it may have been paid. The law does not raise a presumption of non-payment, but of payment when due, unless the contrary is shown by the production of the note, or other evidence repelling the presumption, when the note itself cannot be produced."

We have thus, we think, established the correctness of the instruction that the evidence was not sufficient to support a verdict in favor of the plaintiff for any sum, and, consequently, that there was no material error in the charge of the Court to the jury. No error in any other proceeding in the case is assigned by the plaintiff. We respectfully insist, therefore, that the judgment must be affirmed.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This is an action upon three promissory notes executed by McMickle, deceased, to Bagley and Sinton, and by them transferred to the plaintiff. At the solicitation of the maker, the notes were delivered to him in August, 1852, by the holders, and in their presence and with their consent were then destroyed. On the trial, the plaintiff, in order to account for the non-production of the notes, and to lay the foundation for the introduction of secondary evidence of their contents, read to the Court his own

and his co-payee's affidavits, detailing the circumstances and motives which occasioned the destruction of the notes. These affidavits were held by the Court sufficient to authorize the admission of the secondary evidence, and thereupon the plaintiff gave in evidence and read to the jury a bond or contract, executed in duplicate by all the parties simultaneously with the notes, the maker of the notes retaining one part, and Bagley and Sinton the other. This bond sets forth with sufficient particularity the contents of the notes; it gives their date, amount, and consideration, the parties to whom they were executed, the time they had to run, and the interest they drew. The transfer of the notes to the plaintiff, the presentation of his claim arising thereon to the administrators, its rejection by them, and the commencement of this suit within three months thereafter, were duly proved. With the above, and the admission of the appointment of the defendants as administrators, and that the presentation of the plaintiff's claim was made to them within ten months after their publication of notice calling in claims against the estate of the deceased, the plaintiff rested his case. No evidence was offered on the part of the defendants. The Court thereupon, among other things, instructed the jury that there was no testimony to show that any amount was due upon the notes, and that as the affidavits read to the Court to authorize the secondary evidence of their contents traced the notes to the possession of the maker, and disclosed that they were destroyed by him with plaintiff's consent, no presumption was raised that they were unpaid, in whole or part, but, on the contrary, a presumption was raised in favor of the maker, which the plaintiff was bound to explain by additional evidence; that the affidavits themselves contained an explanation, but in this respect went beyond their true purpose. The verdict and judgment were for the defendants, and a motion for a new trial having been denied, the plaintiff appealed, and assigns these instructions as error.

It is not a matter of course to allow secondary evidence of the contents of an instrument in suit upon proof of its destruction. If the destruction was the result of accident, or was without the agency or consent of the owner, such evidence is generally admissible. But, if the destruction was voluntarily and deliberately made, by the owner, or with his assent, as in the present case, the admissibility of the evidence will depend upon the cause or motive of the party in effecting or assenting to the destruction. The object of the rule of law which requires the production of the best evidence of which the facts sought to be established are susceptible, is the prevention of fraud; for, if a party is in possession of this evidence, and withholds it, and seeks to substitute inferior evidence in its place, the presumption naturally arises, that the better evidence is withheld for fraudulent purposes which its production would expose and defeat. When it

appears that this better evidence has been voluntarily and deliberately destroyed, the same presumption arises, and unless met and overcome by a full explanation of the circumstances, it becomes conclusive of a fraudulent design, and all secondary or inferior evidence is rejected. If, however, the destruction was made upon an erroneous impression of its effect, under circumstances free from suspicion of intended fraud, the secondary evidence is admissible. The cause or motive of the destruction is then the controlling fact which must determine the admissibility of this evidence in such cases.

In Riggs *v.* Tayloe, (9 Wheaton, 483,) the plaintiff brought suit upon a contract for the sale of bank stock, executed in duplicate between the parties, each retaining a counterpart. Having lost his own counterpart, the plaintiff gave notice to the defendant to produce on the trial the one he had, but the defendant declined doing so, alleging that he had lost his also. On the trial, the plaintiff offered to prove the contents of the contract by a subscribing witness, and to entitle him to give this testimony, made the following affidavit: "The plaintiff in this case makes oath, in relation to the memorandum of agreement between the defendant and himself, relative to the stock in the declaration mentioned, that his impression is that he tore up the same after the transfer of the stock, believing that the statements upon which the contract had been made were correct, and that he would have no further use for the paper. He is not certain that he did tear it up, and does not recollect doing so, but such is his impression. If he did not tear it up it has become lost or mislaid; and that he has searched for it among his papers repeatedly and cannot find it." The defendant objected to the testimony, and insisted that no evidence of the contents of the contract should be allowed. The objection was sustained, and the defendant had judgment, and the case was taken to the Supreme Court of the United States, where it was held that the Circuit Court erred in refusing to let the evidence go to the jury, and the judgment was reversed. In rendering its decision the Supreme Court said: "It is further contended, that it appears from the plaintiff's own showing, the destruction or loss of the writing was voluntary, and by his own default; in which case he ought not to be permitted to prove its contents. It will be admitted that where a writing has been voluntarily destroyed, with an intent to produce a wrong or injury to the opposite party, or for fraudulent purposes; or to create an excuse for its non-production, in such cases the secondary evidence ought not to be received; but in cases where the destruction or loss (although voluntary) happens through mistake or accident, the party can not be charged with default. In this case the affiant swears that if he tore up the paper it was from a belief that the statements upon which the contracts had been made were correct,

Bagley *v.* McMickle.

and that he would have no further use for the paper.  In this he was mistaken."

In Blade *v.* Noland, (12 Wendell, 174,) the plaintiff testified that he burnt up the note in suit, the morning after it was given. The destruction was deliberately made, and no explanation of the act was offered on the trial.   The plaintiff had judgment in the Justice's Court, which was affirmed on *certiorari* in the Common Pleas, and the case was taken to the Supreme Court of New York, where the judgment was reversed.   In rendering its decision, the Court said :  " The proof is, that plaintiff deliberately and voluntarily destroyed the note before it fell due, and there is nothing in the  case accounting for or affording any explanation of the act, consistent with an honest or justifiable purpose. Such explanation the plaintiff was bound to give affirmatively, for it would be in violation of all the principles upon which *inferior and secondary* evidence is tolerated, to allow a party the benefit of it who has *willfully* destroyed the higher and better testimony.   I have examined all the cases decided in this Court, where this evidence has been  admitted, and in all of them the original deed or writing was lost or destroyed by time, mistake, or accident; or was in the hands of the adverse party.   Where there was evidence of the actual destruction of it, the act was shown to have taken place under circumstances that repelled all inference of a fraudulent design."

In the case of the Bank of the United States *v.* Sill, (5 Conn., 106,) the Court said :  " When the holder of a bill voluntarily and intentionally destroys it, or alters it fraudulently, he has no remedy, but if he loses, cancels, alters, or destroys it, by accident or mistake, his rights are not affected; his evidence only is impaired.   A bill or note is not a debt, it is only primary evidence of a debt; and when this is lost or destroyed, *bona fide*, it may be supplied by secondary evidence."

Authorities to the same effect might be cited almost *ad infinitum*.   From them it is clear, that the cause or motive of the destruction of the instrument in suit, when voluntarily made, must determine the question of the admissibility of secondary evidence of its contents.   From them it is also clear, that the facts and circumstances of the destruction must be shown in the first instance to the Court, to enable it to judge of the propriety of admitting or refusing the secondary evidence.   These facts and circumstances, in a great number of instances, probably the greater number, are known only to the parties themselves, and from them alone can any proof be obtained.   The same principle, then, which allows the parties to prove by their own testimony the destruction, must necessarily allow them to prove all such facts and circumstances as are requisite to the introduction of the secondary evidence.   If the testimony of independent and disinterested witnesses were essential to prove these facts and

circumstances, there could never be any necessity for the testimony of the parties themselves to the destruction.   The circumstances of the destruction could only be known in connection with the destruction itself, and the latter fact could be established with the former facts by the same witnesses. ' The naked fact of voluntary destruction without explanation, is held such presumptive evidence of fraudulent design, as to preclude all secondary evidence, (Blade *v.* Noland, 12 Wend., 173,) and the restriction placed upon the rule by the Court below, in this case would deprive it of all practical benefit in the numerous, and by far the largest class of cases, where the destruction has taken place when no third party was present.   We do not think, therefore, that the affidavits read to the Court below, in explaining the possession and destruction of the notes in suit by the maker, went " beyond their true purpose."   We do not find any adjudicated case directly upon the question ; but in a great number of cases which we have examined, the facts and circumstances are set forth in the affidavits of the parties, and in some instances, with great particularity ; and, so far from any objection being taken to them on this ground, the facts thus detailed are generally referred to as justifying the admission of the secondary evidence.

Thus, in Riggs *v.* Tayloe, cited above, the statement of the plaintiff, in his preliminary affidavit, of his motive in the destruction of the contract in suit, is referred to in the opinion of the Court as a sufficient explanation to remove the objection to the admission of the secondary evidence.

The preliminary proof is addressed to the Court, and of its sufficiency the Court is the sole judge.   We do not find in the cases cited, nor have we been able to find any authority for the ruling that a presumption against the plaintiff, arising upon facts detailed in the preliminary affidavits, is to be explained by evidence to the jury ; or for the observation of the Court below, in its opinion on the motion for a new trial, that "sometimes the facts and circumstances connected with the destruction have been submitted to the jury, to be passed upon by them in considering their verdict," unless such facts and circumstances were disclosed in the evidence offered to the jury *after* the question of the admissibility of secondary evidence had been disposed of by the Court.

In Page, Executor, *v.* Page, 15 Pick., 368, the preliminary affidavits only showed a diligent and an ineffectual search for the note in suit among the papers of the testator ; it was the evidence before the jury which traced the note to the possession of the defendant, and upon the presumption of payment arising from that possession, the defendant rested as one of the grounds of his defence.   Chief Justice Shaw, who tried the case, instructed the jury, " that ordinarily the non-production of a note by a

party claiming under it raises a presumption of payment; and, therefore, to entitle the plaintiffs to recover, it was not sufficient to prove merely the execution and contents of the note, without some evidence of the loss of it; that here the affidavit of Kelly Page (one of the plaintiffs) stating that he had searched among the papers of the testator, and had not been able to find such a note, was such evidence of its loss as to let in secondary proof of its existence and contents; and that if the jury should be of opinion, upon the whole evidence, that it was not paid to the testator in his lifetime, but remained in the custody of the defendant at the time of the testator's decease, this would be sufficient to rebut the payment arising from the non-production of the note by the plaintiffs."

The plaintiff obtained a verdict, and the defendant moved for a new trial, assigning, as one of the grounds of his motion, this commentary, or rather reference to the preliminary affidavit; but the Supreme Court, in denying the motion, said: " The only commentary made upon the affidavit was an explanation of the reason why the Court admitted secondary evidence. It was entirely proper, as some of the jury, without such an explanation of the rule of the law touching secondary evidence, might have hesitated to give a verdict upon a note which was not produced. The whole charge, it seems to us, was unexceptionable upon that point."

We can not see anything in this case which gives the slightest support to the instructions in the case at bar. The reference to the preliminary affidavit was simply to remove from the minds of the jury any difficulty which might have arisen from the non-production of the note; and by the " whole evidence," upon which the jury were instructed to form their opinion of the payment of the note, was meant the whole evidence before them. The presumption of payment from the non-production of the note, arising upon evidence before the jury, was, of course, to be met and rebutted by evidence before them. But in the case at bar, no such presumption could arise, for there was no evidence before the jury of any possession of the notes in suit by the intestate after their execution to Bagley and Sinton. The presumption, if any, arose upon the preliminary evidence, upon which the jury could not pass. Arising in the mind of the Court, it should have been stated at the time, in order that the plaintiff might have introduced other evidence, if he possessed it. Such presumption was disposed of by the ruling on the sufficiency of the affidavits, and in admitting the secondary evidence.

In Garlock v. Georbner, (7 Wend., 199,) the plaintiff sued for the amount of a promissory note, alleged to be in the possession of the defendant, and to have been given upon the settlement of a slander suit. In addition to the note, the costs of the slander suit were to be paid by the defendant. The general issue was

pleaded, accompanied with notice that the defendant would prove a voluntary delivery up of the note, by the plaintiff, to him.    On the trial, the agreement to settle the slander suit, the execution and contents of the note, its delivery to the defendant, and the payment of the costs of the slander suit, were duly proved.    The plaintiff then called upon the defendant to produce the note, and on his refusing to do so, offered to prove that, under an impression that the defendant was entitled to its possession, until the costs were adjusted and paid, he had given the note up to the defendant, to keep until such payment or settlement; that, after receiving it, the defendant promised to pay the costs, and the amount of the note when it became due, and had made a similar promise after the costs were paid.    This evidence, upon objection, was rejected, and the plaintiff nonsuited, and the case went to the Supreme Court, where the judgment was reversed.    Mr. Justice Nelson, in delivering the opinion of the Court, said, whether the note " was intended to be given up and relinquished by the plaintiff or not, when put in the defendant's possession, should have been submitted to the jury.    If the note was put by the plaintiff into the possession of the defendant through misapprehension, or ignorance of his rights, or for safe-keeping merely, or for any other cause inconsistent with the intention of relinquishing his property in it, for aught appearing in the bill of exceptions, the plaintiff would be entitled to recover.    The plaintiff should have been allowed, if he could, to explain the possession of the note by the defendant, as well to rebut the *prima facie* inference of extinguishment of it, as to account for its non-production on the trial."

In this case, there was no preliminary proof addressed to the Court; and the presumption of extinguishment of the note, from its possession by the defendant, of course, could only arise upon the evidence before the jury.    This case, like all the others cited, furnishes no authority for the instructions in the case at bar.

The secondary evidence being admitted, it became the province of the jury to judge of its credit and weight.    It took the place of the primary evidence, and was entitled to the same consideration.    It was a substitute for the original notes, and if sufficiently full as to their contents, it placed the plaintiff in the same position in Court as though the secondary evidence had never been required.    (Jackson *v.* Betts, 9 Cowen, 222.)    The distinction between primary and secondary evidence, has reference to its quality, and not to its strength.    Secondary evidence may be equally conclusive as primary.    In the present case, the former existence of the notes, their contents, their execution by the intestate to Bagley and Sinton, and their assignment to the plaintiff, were fully established by the secondary evidence; yet

the consideration of this evidence was taken from the jury by the instructions.

The objection that the bond in evidence does not prove the delivery of the notes in suit, to Bagley and Sinton, we do not think tenable. The instrument was intended for the protection of the intestate; it contains no promise on his part, but an obligation to him of $12,000, for the fulfillment of its condition by Bagley and Sinton. It recites the entire agreement between the parties, and the amount " due Bagley and Sinton " on the day of its execution, and that the intestate " has executed unto " them the three promissory notes in suit; and specifies the deed to which he shall be entitled on their payment, and the consequences of default. The terms " has executed unto," when applied to instruments of writing, import both making and delivery. The recital of the fact, under seal, that the intestate " has executed unto the said Bagley and Sinton," in the past tense, the notes can have but one meaning, namely : that the intestate has made and delivered the notes to them.

The judgment of the Court below is reversed, and the cause remanded for a new trial.

BURNETT, J.—I concur in reversing the decision of the Court below. Conceding that the secondary evidence was properly admitted, the plaintiff was entitled to a verdict. But I express no opinion as to the question whether *affidavits* were admissible to prove the destruction of the notes, when the plaintiff and the witness could have been examined in open Court, and none as to whether the facts embodied in the affidavits proved the destruction of the notes by accident or mistake, so as to justify the admission of secondary evidence of their contents. Were we to decide these questions, under the existing state of the case, we might make a decision of questions immaterial, as the plaintiff may prove a different state of facts upon another trial. The learned counsel for plaintiff states, in his brief, that " had the Court sustained the objection of defendants' counsel to the introduction of secondary evidence of the notes, because not satisfied, the plaintiff would have offered further *preliminary proof.*" These questions have never been decided by this Court, but our decisions have turned upon other grounds.