BAGLEY *v.* EATON *et al.*, ADMINISTRATOR AND ADMIN-
ISTRATRIX OF McMICKLE, DECEASED.

*Per Field, J.*—The rule which excludes the testimony of parties has reference to the
matters in issue, and not to incidental questions involving matters auxiliary to the
trial of the cause, which are addressed solely to the Court. Upon these incidental
questions the oath of parties is received, and its admissibility, though generally placed
on the ground of necessity, to prevent a failure of justice, does not always, or even in
the greater number of instances, depend upon that circumstance.

Whatever may have been the reason originally assigned, the true ground upon which
the testimony of parties is admitted to prove the destruction of written instruments,
is this : that the testimony relates to matters preliminary and incidental, is addressed
solely to the Court, and does not affect the issue to be tried by the jury. Upon such
matters, the rule as to the incompetency of parties and interested persons does not
apply. The testimony proves nothing in the cause ; it only prepares the way for the
introduction of proof. The existence and contents of the instruments must be esta-
blished by distinct and competent evidence.

That the preliminary testimony of the parties may be presented by affidavit, is too well
settled to admit of question.

In this State, the testimony may be given orally, or offered by affidavit. The con-
venience of the parties and of the Court will sometimes suggest one course, and some-
times another. Either course may be adopted, and either course will avail.

It is within the discretion of the Court, after hearing the affidavits, to require the oral
examination of the parties, if they are present at the trial, in relation to the facts and
circumstances detailed by them.

The destruction of notes in no respect impairs the liability of the maker, or the right of
the plaintiff to recover upon them. The right of action upon a contract in writing is
not barred by the Statute of Limitations until the lapse of four years after it has
accrued. The fact that the contract was in writing, and not the present existence of
the writing, determines the period within which the action must be brought.

The highest evidence of that fact is, of course, the writing itself ; but, in case of its loss
or destruction, the fact may be established by parol. The destruction of notes, then,
only impairs the evidence of the liability of the maker.

It is not the practice of this Court to direct the entry of a judgment in the Court below,
in actions at law, except where the facts have been found by the Judge who tried the
cause, or by the special verdict of a jury, or where, from the character of the action
or pleadings, one of the parties is entitled to judgment without proof.

*Per Terry, C. J.*—The plaintiff having declared on promissory notes, was only required
to prove their due execution, and their rejection by the administrator of McMickle,
in order to establish *prima facie* his right to a verdict.

The bond containing a description of the notes, which was admitted as competent evi-
dence, pertinent to the issue, and the evidence of the due presentation of the claim,
and its rejection by defendants, were sufficient, and the nonsuit was improperly
granted.

APPEAL from the District Court of the Fourth Judicial Dis-
trict, County of San Francisco.

This action was commenced on the fourth of April, 1855, by
the appellant, against the respondents, on three promissory
notes made and delivered by the defendants' intestate to Bagley
and Sinton, and by them assigned to Bagley. On the death of
the intestate, the claim, duly verified, was presented to the ad-
ministrator, Eaton, and rejected, and suit brought within three
months thereafter.

The answer contains five different defences :

1. A general denial.
2. The Statute of Limitations of four years.
3. Payment and satisfaction.
4. That on May 1, 1850, Bagley and Sinton agreed with the intestate to sell him a lot in San Francisco for $14,000, on which he paid them, up to the twenty-second of March, 1851, $8400, on which day the parties settled, and entered into an agreement in writing, setting forth the notes sued on as the balance of the purchase-money due, but that the liability of McMickle was limited, and that it was provided that if the notes were not paid, the intestate was not to be holden, but the lot to become forfeited to Bagley and Sinton, and they were to accept it in full discharge of the notes ; that the notes were not paid, and that Bagley and Sinton did accept the lot, and sold it to other persons, and so discharged the notes.
5. That the notes were without consideration, and void.
[*Note*, as to the second plea, the action was commenced April 4, 1855.]
The fourth plea is, the defendants' legal construction of the instrument hereafter shown in the evidence, and determined to be an erroneous construction by the Supreme Court.   5 Cal., 497.
The case has been tried four times in the Fourth District Court—the last time in June, 1858.
On the trial, it was admitted that the defendants were respectively the administrator and administratrix of Grove C. McMickle, deceased.
The plaintiff's counsel then offered to read in evidence to the Court, for the purpose of laying the foundation for the introduction of secondary evidence of the notes sued on, to the jury, the following affidavit of the plaintiff, viz. :

"David T. Bagley, the plaintiff in the above-entitled suit, being duly sworn, says :   On the twenty-second day of March, A. D. 1851, Grove C. McMickle made and delivered to the firm of Bagley and Sinton three promissory notes of that date, described and referred to in a certain instrument in writing of that date, signed by this plaintiff and R. H. Sinton and Grove C. McMickle, and acknowledged before J. P. Haven, notary public ; that said notes remained in the possession of said Bagley and Sinton for some time after their maturity, and that, in the demand for the same, said Bagley and Sinton had been very lenient and indulgent to said McMickle, and had resorted to no legal proceedings to collect the same ; and that said McMickle, having repeatedly requested said firm not to sell or negotiate said notes, and fearing a negotiation to some person who might be more rigorous in the collection of the same, the parties altogether, viz. : said Bagley, Sinton and McMickle, consented and agreed

that said notes, for the sole purpose of preventing their negotiation into the hands of some other party, or of their getting into the market, might be destroyed, and believing also that the rights of the parties would remain the same as before the destruction ; and the said notes were then and there, to wit, about the fifteenth day of August, A. D. 1852, torn up into small pieces and thrown away, in the presence of all the parties.    That said destruction was done for the purpose aforesaid, and by the agreement of the parties was not to affect the right of the said Bagley and Sinton to recover on said notes, and with full intent on the part of all the parties, that the rights of the parties should be as if the notes continued to exist.    ·        DAVID T. BAGLEY."

"Sworn and subscribed before me, this twenty-third day of July, 1855.                A. A. SELOVER, Notary Public."

To the introduction of which affidavit, for the purpose aforesaid, the counsel for the defendants objected, on the grounds, *first,* that the evidence of the plaintiff ought not to be received either in the shape of an affidavit, or orally, because it appeared from the said affidavit that if the facts therein stated were true, the plaintiff could produce a disinterested and competent witness, namely, Richard H. Sinton, able to testify generally in the cause, who could testify to the identical facts stated in the affidavit as fully and effectually to all intents and purposes as the plaintiff; and, *second,* that if the plaintiff could be permitted to introduce his own evidence for the purpose aforesaid, he ought, being then and there present in Court, in his own proper person, to testify orally to the Court, so that the truth of the matter might be better known, and the Court be enabled to judge the better of the facts and circumstances of the destruction of the notes sued on in the affidavit mentioned.    The Court held that if the plaintiff insisted upon introducing his own evidence to lay the foundation for secondary evidence of the notes sued on, to the jury, it should require him to testify orally to the Court, touching the facts and circumstances connected with the destruction of the notes stated in the said affidavit, he being then and there present in Court, in his own proper person.    To which ruling and decision of the Court, the plaintiff's counsel then and there excepted.

The plaintiff then offered to testify orally to the Court, to lay the foundation for the introduction of secondary evidence of the execution and contents of the notes sued on.

The counsel for the defendants objected to the plaintiff being permitted to testify orally, for the purpose aforesaid, on the ground that it appeared from the said affidavit of the plaintiff that, if the facts therein stated were true, he could produce a disinterested and competent witness, namely, Richard H. Sinton, able to testify generally in the cause, who could testify to the

identical facts stated in the said affidavit, as fully and effectually, to all intents and purposes, as the plaintiff.

The Court overruled the objection, and permitted the plaintiff to testify orally to the Court for the purposes aforesaid, to which ruling and decision of the Court, the counsel for the defendants excepted.

The plaintiff was then sworn, and testified orally to the Court to lay the foundation for the introduction before the jury of secondary evidence of the contents of the notes sued on, as follows, viz. :

"I am the plaintiff in this action, and was a member of the firm of Bagley and Sinton. We held notes against Grove C. McMickle, deceased. The exact dates of these notes, I do n't remember. The original transaction was for $14,000, about some real estate, and something was paid on it, and left a balance of between six and seven thousand dollars, for which the notes were executed.

"There was a bond, executed in duplicate, which recites the notes, one of which McMickle took, and one of which Bagley and Sinton kept."

The witness looked upon the bond, an instrument hereinafter set forth, signed by said Bagley, Sinton, and McMickle, and said :

"It is the instrument referred to, and describes the notes on which this suit is predicated. Those notes were torn up. I do n't recollect exactly the date they were torn up, but it was five or six years ago. They were torn up in the presence of all three of the parties. McMickle had several interviews with me in reference to these notes. They were casual meetings on the streets. We had no appointments. For several months, probably, I declined giving them to him. He met me again, and was more importunate, and I told him to come with me to Mr. Sinton, and that what he agreed to I would. Sinton, McMickle, and myself, agreed that the notes should be given up to be destroyed, with the understanding that the destruction did not vitiate the debt. That is all with reference to the destruction of the notes. The reason assigned by McMickle for desiring the destruction of the notes was, that he was poor, and in difficulties, and could not get along if these things were out against him. That is all I recollect. He said that he did not want them to be out. I do n't remember the precise expression. He said as long as this debt was accumulating, and liable to get into other hands, he had no courage to get along."

Here the witness, without being thereunto examined, voluntarily said :

"I will state further, that, at the time, I did not think McMickle was worth anything, or ever would be, for that reason more readily consented to the destruction of the notes. I thought

the notes were worth nothing; that I was giving up nothing. From *his* representation of his condition and prospects, I did not think I was destroying any valuable evidence, and this was really the reason why the notes were allowed to be destroyed. I had implicit confidence in his statements about his own affairs."

Cross-examined by the counsel of the defendants.—" I don't remember which of the three destroyed the notes. They were destroyed in the presence of all three; either one might have done it. It was by consent of all parties."

The plaintiff's attorney then presented and offered to read to the Court, as a part of his preliminary evidence to lay the foundation for the introduction of secondary evidence of the notes sued on, the following affidavit of R. H. Sinton, viz. :

" Richard H. Sinton being duly sworn, deposes and says : That on the 22d day of March, A. D. 1851, Grove C. McMickle made and delivered to the firm of Bagley and Sinton, (then composed of the plaintiff and this affiant,) three promissory notes of that date, being the same referred to and described in a certain instrument of writing of that date, executed in duplicate by said Bagley and said McMickle, and this affiant, under their respective hands and seals, and acknowledged by them respectively before J. P. Haven, a notary public, on the same day. That said notes remained in the possession of said Bagley and Sinton for some time after their maturity, and that in the demand for the same, said Bagley and Sinton had been very lenient and indulgent to said McMickle, and had resorted to no legal proceedings to collect the same, and that the said McMickle repeatedly urged said firm not to sell or negotiate the said notes, as he feared a negotiation to some person who might be more rigorous in the collection, and believing he had a claim for indulgence on said firm, and having a great objection to his paper being hawked about in the market—the parties altogether, to satisfy said McMickle, and to prevent a negotiation of said notes into the hands of some other parties, or their getting into the market, consented that the same might be torn up or destroyed, and, according to the best recollection and belief of this affiant, the same were torn up into small pieces about the 15th day of August, A. D. 1852, and thrown away, in the presence and by consent of said Bagley and Sinton and said McMickle, but with the distinct understanding, on the part of all, that the claim of said Bagley and Sinton on said notes, against said McMickle, should remain exactly as if the notes still existed, and that said Bagley and Sinton consented to the same only to satisfy said McMickle as aforesaid, and with a full belief on their part that their claim on said notes was not affected thereby, and that the evidence of the same, contained in said instrument, of the date of 22d of March, 1851, would fully

prove the same, and be all that would be necessary to enforce their collection.                                    R. H. SINTON."

"Sworn and subscribed before me, this twenty-third day of July, 1855.              W. G. WOOD, Deputy County Clerk."

To the introduction of which affidavit, the counsel for the defendants objected, on the ground that the said Richard H. Sinton being then and there present in Court, in his own proper person, ought to be produced to testify orally to the Court touching the facts and circumstances of the destruction of the notes sued on as stated in the said affidavit, that the truth of the matter might be the better known, and for the better satisfaction of the Court, and that the Court might be enabled to judge the better of the said facts and circumstances.

The Court held, that if the plaintiff insisted upon introducing the evidence of the said Richard H. Sinton to lay the foundation for the introduction, before the jury, of secondary evidence of the contents of the notes sued on, it would require the plaintiff to produce the said Richard H. Sinton, to testify orally to the Court touching the facts and circumstances connected with the destruction of the notes stated in the last-mentioned affidavit, he being then and there present in Court in his own proper person.

To this ruling and decision of the Court, the counsel for the plaintiff excepted.

The witness was then placed on the stand by plaintiff's counsel, to testify to the Court as preliminary to the introduction of secondary evidence, and testified as follows :

"I was formerly a member of the firm of Bagley and Sinton. I knew McMickle in his lifetime. We held the notes in controversy in this action against him. They were in my own handwriting, and were in my possession, kept in a safe, until they were delivered up by me to McMickle, at request of Mr. Bagley, to be destroyed."

The witness here looked upon the bond or instrument hereinafter set forth, signed by said Bagley, Sinton, and McMickle, and identified the same as an original paper, and as a paper describing the notes referred to.   The witness further testified :

"About August, September, or the Fall of the year 1852, Mr. McMickle came with Mr. Bagley to my office, No. 150 Montgomery street.   Mr. Bagley said that he and McMickle had talked about this matter, and that McMickle said these notes would possibly get into the market against him, and that he wished to have them out of the way.   I can not relate the precise words : the substance was, that McMickle wished to get them out of the market.   The understanding at the time was, that they were given to him *to prevent the currency of the notes, so as to relieve him from any apprehension on that score.*   It was on that condition that I gave them up.   I handed them to McMickle myself.   He

wished to get them out of the way. When he got the notes, he also wanted the bond, which I refused to give him, because it was the only evidence I had left that the obligation existed in any shape. *They were given up distinctly with the understanding, at the time, that the indebtedness upon the notes should be paid. I mean to say that the notes were given up with the distinct understanding that the amount of the notes—the debt—should be paid,* and I refused to deliver up the bond, because that was the only evidence left of the indebtedness. You may say that the indebtedness upon the notes—the debt—was to be paid. I do not make any distinction between the notes and the debt. McMickle, I think, tore up the notes in the office. I handed them to him. Frequently, after that, I asked him for a settlement of this matter, and I was put off frequently by him. He said he would settle the debt when he got his affairs all right; when he got his affairs all right he would pay it. The last interview was a month or two before he was killed, and he answered to the same purpose entirely. From the time of the destruction of these notes to the time of his death I had probably a dozen, or at least half a dozen interviews with him on the subject. It was frequently that I asked him for the settlement of this debt, and he returned the same general answer. He never pretended the indebtedness was not due, or made any objection, or denied it—on the contrary, he never thought of that, or made any objection to any of my applications. His answers were, that his affairs were not such as would enable him to pay. He would pay when he got his affairs all right. He left my mind under the impression that he was still embarrassed. The idea I had, at the time, was that the bond was the only written evidence of the transaction; that it specified the amount of the notes, and was a written evidence of the indebtedness; and I knew that it could not be put in the market against McMickle."

Cross-examined.—" I did state, on a former examination, that my impression was that there was a credit on the notes for $3000. If the property was sold after the giving of the bond, the amount for which it was sold must have been credited on the notes. I have sold my interest in this claim to Mr. Bagley, for a nominal sum—ten dollars."

Re-examined.—" I have assigned my entire interest in the claim to Bagley, and now have none. I am unable to say whether any formal credit was written on the notes—but if the lot was afterwards sold, he (McMickle) would have undoubtedly got credit for it. If it was not done, it ought to have been done."

The plaintiff's counsel then read in evidence (as a further portion of the preliminary evidence to the Court, to lay the foundation for the introduction of secondary evidence of the notes sued on, to the jury,) the deposition of James C. Crane, which proved

that McMickle recognized, within a few weeks previous to his death, his obligation to pay the notes.

The counsel for the plaintiff then offered to introduce as secondary evidence to the jury, of the execution and contents of the promissory notes sued on, the following instrument, being the bond or instrument referred to by the said Bagley and the said Sinton, in their foregoing evidence—it being admitted that the signatures to the said instrument are genuine, and that the same was executed in duplicate, one of the duplicates being then in the possession of the plaintiff, and the other in possession of the defendants, as administrator and administratrix of the estate of Grove C. McMickle, deceased—to wit:

"Know all men by these presents, that we, David T. Bagley and R. H. Sinton, composing the firm of Bagley and Sinton, of San Francisco, are held and firmly bound unto G. C. McMickle, also of San Francisco, in the sum of twelve thousand dollars, lawful money of the United States of America, to be paid to the said McMickle, his heirs, executors, or assigns; for which payment well and truly to be made, we hereby bind ourselves, our heirs, executors, and assigns, firmly by these presents. Sealed with our seals, and dated this twenty-second day of March, A. D. eighteen hundred and fifty-one.

" *Whereas,* the said Bagley and Sinton, on or about the first day of May, A. D. eighteen hundred and fifty, did sell unto the said McMickle, for the sum of fourteen thousand dollars, a certain lot of ground in the city of San Francisco, situated on the north-east corner of Pacific and Kearny streets, the same measuring twelve and one-half varas on Pacific, and thirty varas on Kearny street;

" *Whereas,* the said McMickle has paid at different times, of the above fourteen thousand dollars, the sum of eight thousand four hundred and twenty dollars, leaving a balance still due Bagley and Sinton, of five thousand five hundred and eighty dollars, which, together with one thousand dollars interest accrued, makes an aggregate, due Bagley and Sinton this day, of six thousand five hundred and eighty dollars; *Whereas,* the said McMickle has executed unto the said Bagley and Sinton three promissory notes, of even date with these presents, amounting in the aggregate to the last written sum—one of said notes being for the sum of two thousand dollars, payable thirty days after date —another for a like sum of two thousand dollars, payable sixty days after date, and the third and last for the sum of two thousand five hundred and eighty dollars, payable ninety days after date—each and all bearing interest at the rate of five per cent. per month from date:

"Now, the condition of this obligation is such, that if the said McMickle shall well and truly pay to the said Bagley and Sin-

Bagley *v.* Eaton.

ton, or their assigns, the said notes at maturity, then the said Bagley and Sinton agree and hereby bind themselves to execute to the said McMickle, a quit-claim-deed of all their right, title, and interest, in and to the aforementioned lot of ground. But if the said McMickle shall make default in the payment of any one or all of the said notes, then the said McMickle is to forfeit all right or interest in the said lot of ground; and the said Bagley and Sinton are hereby authorized to make such disposition thereof, discharged of all claim, or pretence of claim, or interest in the same, on the part of the said McMickle, as they may see fit.

"In witness of all of which, the said David T. Bagley and R. H. Sinton for themselves, and the said G. C. McMickle for himself, have signed and sealed these presents, in duplicate, at the city of San Francisco, this twenty-second day of March, A. D. eighteen hundred and fifty-one.

"Attest:                             " DAVID T. BAGLEY, [L. S.]
                                     " R. H. SINTON, [L. S.]
                                     " G. C. McMICKLE, [L. S.]

" NOTE.—In fourth line from bottom, first page, the words 'payable ninety days after date,' are interlined and noted before signing.                     " G. W. BAKER,
                                     " DANIEL J. THOMAS, Jr."

" *State of California, County and City of San Francisco : ss.*— On this twenty-second day of March, A. D. eighteen hundred and fifty-one, personally appeared before me, a notary public, duly admitted and sworn, David T. Bagley, R. H. Sinton, and G. C. McMickle, known to me to be the persons described in and who executed the foregoing instrument of writing, who acknowledged that they executed the same freely and of their own accord, for the purposes therein set forth.

"[L. S.]                             J. P. HAVEN, N. P."

To the introduction of which instrument as secondary evidence to the jury of the execution and contents of the said promissory notes, the counsel for the defendants objected, on the ground, that the preliminary evidence was insufficient to justify the admission of secondary evidence of the execution and contents of said promissory notes.

And the Court held that the preliminary evidence was insufficient to justify the admission of secondary evidence to the jury of the execution and contents of the promissory notes sued on, and refused to permit the said bond or instrument to be introduced before the jury as secondary evidence to them of the execution and contents of the notes sued on, but permitted the said paper to be read in evidence to the jury, as pertinent and com-

petent evidence in the cause, not as secondary evidence of the execution and contents of the notes.

To this ruling and decision of the Court, the counsel for the plaintiff then and there excepted, and the said instrument was then read in evidence to the jury.

The plaintiff then introduced proof of the presentation of the claim arising upon the notes to the administrator, and its rejection, and also proof of the transfer of the notes and claim to the plaintiff.

It was also admitted that due publication had been made by the administrator, calling in all claims against the estate within ten months, and that the said claim had been presented within said time. The plaintiff also read the above-mentioned deposition of Crane, and then rested his case.

The Court then, upon motion of defendants' counsel, granted a nonsuit, and to the ruling the plaintiff excepted. The plaintiff afterwards moved to set aside the nonsuit and for a new trial, which motion was denied. In denying the motion, the Court placed its ruling in refusing the admission of the secondary evidence, on the ground, that by the testimony of the plaintiff and Sinton, "it appeared that by the consent of the parties thereto, the notes were voluntarily destroyed, and with the distinct understanding to prevent their being used as evidence."

The plaintiff appealed both from the judgment and the order refusing a new trial.

*Hoge & Wilson* for Appellant.

I. As on the three previous trials in the District Court, the affidavits of the appellant, Bagley, and his co-payee, Sinton, were offered to the Court in evidence, to lay the foundation for the introduction of secondary evidence of the contents of the notes sued on.

On each of those three trials, the Court below received the affidavits as competent evidence to the Court for that purpose, and overruled the objections of defendants' counsel to their introduction.

On the fourth trial, the Court refused to receive those affidavits as preliminary evidence. This was the first error.

The decision of the majority of this Court, on the third appeal, clearly recognizes the affidavits as competent, and as the usual evidence on such questions.

This is also fully decided in Beach v. McCann, 2 Cal. R., 26 ; Tayloe v. Riggs, 1 Peters, 596 ; Wells v. Martin, 1 Ohio St. R., 386–7 ; and a host of other cases, cited in our brief on the last appeal, 9 Cal., 430.

II. The plaintiff and his co-payee, Sinton, were, after this ruling of the District Court, placed upon the stand, and examined orally, and testified to the Court, to lay the foundation

for the introduction of secondary evidence to the jury, of the execution and contents of the notes.

This preliminary testimony of these two witnesses was substantially the same as that contained in the affidavits which have three times before been inspected by the Supreme Court. In addition to this, was the evidence of James C. Crane, which shows that the deceased recognized this indebtedness as valid and binding upon him within a few weeks of his death.

After this preliminary evidence, the Court permitted the secondary evidence of the execution and contents of the notes sued on to go to the jury, but not as such. It was admitted as competent and relevant testimony only.

What all this means, we confess ourselves profoundly ignorant. Heretofore, the learned Judge admitted this secondary evidence to the jury, without any qualification as to its effect; but here it has been deemed necessary to annex a condition to its effect, and now the evidence goes in as " pertinent and competent evidence in the cause, but not as secondary evidence of the execution and contents of the notes."

The only question in dispute was the execution and contents of the notes, and how the bond offered in evidence was " pertinent and competent " to that issue, and yet not evidence on that issue, involves a mystery too profound for our solution.

We will, however, assign this as the second error in the Court below.

If, notwithstanding the conditional or qualified admission of this secondary evidence, it really went to the jury, on the issue before them, then the plaintiff was clearly entitled to a verdict. This was decided by the Supreme Court on the third appeal. If it went to the jury by a sort of legal fiction, or empty ineffective theory, or only seemed, through a juggle, to go to the jury, whilst in fact it never went to them at all, then the question remains as to whether there was a sufficient foundation laid by the preliminary evidence, and whether it ought not to have been permitted to go really, practically, and in fact, to the jury.

From the opinion of the District Court, on refusing the motion for a new trial, the secondary evidence would seem to have been rejected, as such, on the ground that " it appeared that by the consent of the parties thereto, the notes were voluntarily destroyed, and with the distinct understanding to prevent their being used as evidence."

Again, the Court says: " Now it may be true that the debt mentioned in the notes, and also in the bond, remains, and that the plaintiff has a right to recover it, either on the bond," " or otherwise;" and yet that secondary evidence could not be introduced, because the notes were destroyed by consent, " for the purpose of preventing their being used as evidence."

Bagley v. Eaton.

It is respectfully submitted that here are to be found errors of fact, errors of law, and errors of mingled law and fact.

The grand error of fact consists in assuming that the motive and object of the destruction was "to prevent their (*i. e.* the notes) being used as evidence." This error is so palpable, and is so much the reverse of the facts, as testified by the witnesses, that it needs but a reference to the testimony to show it.

The plaintiff testified as follows, viz. :

"Sinton, McMickle and myself agreed that the notes should be given up to be destroyed, with the understanding that the destruction did not vitiate the debt."

Again : "The reason assigned by McMickle for desiring the destruction of the notes, was that he was poor and in difficulties, and could not get along if these things were out against him."

Again : "He (McMickle) said as long as this debt was accumulating and liable to get into other hands, he had no courage to get along."

The witness Sinton testified to the conversation between himself, Bagley, and McMickle, and that McMickle said these notes would probably get into the market against him, and that he wished to have them out of the way.

Again : "The substance was that McMickle wished to get them out of the market." "The understanding, at the time, was that they were given to him to prevent the currency of the notes, so as to relieve him from any apprehension on that score. It was on that condition I gave them up."

Again : "They were given up, distinctly with the understanding, at the time, that the indebtedness upon the notes should be paid. I mean to say that the notes were given up with the distinct understanding that the amount of the notes—the debt—should be paid."

Again : "You may say that the indebtedness upon the notes was to be paid. I do not make any distinction between the notes and the debt."

We then submit that there is not the slightest evidence here that the motive and object of the destruction was to prevent the notes "being used as evidence."

The sole motive and object was to prevent the notes getting into the hands of other persons than the payees, to keep them out of the market, and to gratify McMickle's apprehension on that score. It was not to get rid of the debt to Bagley and Sinton, for, by the testimony of Bagley, Sinton and Crane, it appears that at the destruction of the notes, and always afterwards, he promised to pay them and recognized the obligation. It was only third persons who were obnoxious to him in this relation; it was only compulsory process at the hands of strangers that he feared. He asked no change in his relations with the payees of those notes, except to remove the ability on their part to put

his paper in the market, and enable strangers to harass him. The payees he always promised, and was willing to pay; and only claimed indulgence until his affairs were in better and more prosperous condition.

After so glaring a misconception of this simple fact, it is not surprising that the District Court should draw from it a conclusion illogical or illegal. And here we find a conclusion erroneous both in logic and in law.

It is said that though the debt mentioned in the notes remains, and the plaintiff has a right of action to recover it, yet the action can not be brought on the notes, because of the destruction "for the purpose of preventing them being used as evidence."

Now, this is first illogical, because if the object was to prevent the notes being used as evidence, that was perfectly accomplished by their destruction. As a physical thing, they ceased to exist, as much as a house destroyed by fire. But *non constat* that other evidence may not be used to prove the same thing, *i. e.* the execution and contents of the notes. The production of the notes would be the evidence of this; that being impossible, the understanding is complied with, and other evidence is produced; that is, the bond, which is secondary evidence of the same thing.

The conclusion is also erroneous in law.

This Court held, in the last decision of this cause, (9 Cal., 430,) that "the object of the rule of law which requires the production of the best evidence of which the facts sought to be established are susceptible, is the prevention of fraud—for if a party is in possession of this evidence, and seeks to substitute inferior evidence in its place, the presumption naturally arises that the better evidence is withheld for fraudulent purposes, which its production would expose and defeat. When it appears that this better evidence has been voluntarily and deliberately destroyed, the same presumption arises, [*i. e.*, 'that the better evidence is withheld for fraudulent purposes, which its production would expose and defeat.'—H. & W.] and unless met and overcome by a full explanation of the circumstances, it becomes conclusive of a fraudulent design, and all secondary or inferior evidence is rejected."

On the third trial in the District Court, the learned Judge held, in his instructions to the jury, that "the affidavits [the preliminary evidence] themselves contain an explanation, but in this they go beyond their true purpose."

On the contrary, on the last appeal, this Court held : "We do not think, therefore, that the affidavits read to the Court below, in explaining the possession and destruction of the notes in suit, went beyond their true purpose."

The decision of the District Court, on this fourth trial, is in direct contravention of his own previous rulings and the last decision of the Supreme Court.

The whole question is one of evidence. The object of the rule

of evidence is, the prevention of fraud in the suppression of ev-idence. When no such fact can be supposed, when that reason is satisfied, the secondary evidence is admissible. In the lan-guage of the Court, in The Bank of U. S. v. Sill, 5 Conn. R., 106, as quoted by this Court on the last appeal: "A bill or note is not a debt, it is only primary evidence of a debt; and when this is lost or destroyed, *bona fide*, it may be supplied by secondary ev-idence."

The other cases reviewed at the same time are equally con-clusive.

We would also beg leave respectfully to call the attention of the Court to the cases cited on the third appeal. Bagley v. Mc-Mickle, 9 Cal., 430.

We therefore contend that the views and decisions of the Court below are erroneous in point of fact, erroneous in point of logic, and erroneous in point of law; are inconsistent with the former rulings of the same Court, and in total disregard of the decisions of the Supreme Court.

Again: it is to be remembered always, in this case, that this *bona fide* debt—this debt by an express, open, written agreement—has never been paid, or in any way satisfied—no defence of the slightest merit interposed or shown; a mere dry, barren, tech-nical defence is sought to be maintained.

The clear intention of all the parties was, that nothwith-standing what had taken place, this debt should be paid. If, in the face of all this, the intestate had, when alive, set up this un-righteous defence, it must have been held, by any just tribunal, that all this was a miserable trick, and fraud, and contrivance, to get rid of an honest debt. But we have it, from the testimo-ny of two disinterested witnesses, Sinton and Crane, that the debt was recognized by McMickle, always, as obligatory upon him, and that he was too honest and just a man to seek to evade it. It is the *careful* and upright administrators who refuse to pay what their intestate always promised and intended to pay.

Mr. Bagley swears that it was the distinct understanding that the destruction of these notes "did not vitiate the debt."

Mr. Sinton says the understanding at the time was, distinctly, "that the indebtedness upon the notes should be paid." Again, he says: "The idea I had at the time was, that the bond was the only written evidence of the transaction; that it specified the amount of the notes, and was a written evidence of the in-debtedness."

Sinton and Crane both show that McMickle always recognized this obligation as existing. These notes were running on inter-est, at five per cent. per month; they were the result of a settle-ment—a statement of account. The amount of these notes and interest the payees were entitled to.

It is very clear they did not intend to release any part of this

debt.   There was no consideration for such a release; it was not under seal, and otherwise would have been a *nude pact.*   If the release and discharge could be, by operation of law, then, even, being in contravention of the intention and understanding of the parties, it falls directly within the principles of this Court, as laid down in the decision of this case on the third appeal.

"If, however, the destruction was made under an erroneous impression of its effect, under circumstances free from suspicion of intended fraud, the secondary evidence is admissible."

The case of Riggs *v.* Tayloe, 9 Wheat., 483, is very like this, for there one paper was voluntarily destroyed under the belief that another paper secured the party in all his rights.

In Livingston *v.* Rogers, 2 Johns. Cases, 488, the plaintiff destroyed the instrument, "not thinking it of any utility to be preserved."

In Hughes *v.* Wheeler, 8 Cow. R., 77, the Court, in a case of voluntary and intentional, but *bona fide* destruction, held the destruction of the note a matter of no importance.

The cases of a voluntary destruction of deeds for lands, with the intent to revert the title in the grantor, have always been held to be without effect, and the title necessarily provable by secondary evidence of the execution and contents of the deeds destroyed.   See Jackson *v.* Anderson, 4 Wend., 482, 483, and the cases there cited; Duncan *v.* Wickliffe, 4 Scam., 453, and cases cited.

No distinction can be made here between the notes, or rather the indebtedness on the notes, and the original indebtedness or consideration.   The parties here evidently made no such destruction, and looked to the notes and their amount, and the indebtedness, as one and the same thing.   See, particularly, Sinton's testimony.

But the rule of law which excludes secondary evidence of the destroyed notes, equally excludes any evidence of the original transaction out of which the notes grew.   See Blade *v.* Noland, 12 Wend., 173; Martendale *v.* Follet, 1 N. Hamp., 99.

In the last case, the very proposition is thus plainly put by way of illustration.   [The case was one of a fraudulent alteration of a note, and an attempt to recover on the original consideration.]

"Indeed, permitting a recovery under the circumstances of this case, would be equivalent to a decision that an obligee may give a valid discharge to an obligor of his bond or note, and still recover the amount of them."

The true doctrine is, and all the authorities are, that what satisfies the note satisfies the original debt; what satisfies the latter bars the former.   The intention of the parties here, was to keep this whole obligation alive, and in full force and vigor.   If the plaintiff is defeated here, he is defeated contrary to the plain

agreement, and distinct understanding, and good faith of the parties at the time, and loses a just debt without one cent of compensation, or any consideration, actual, legal, or equitable.

Besides, there is no such defence interposed as a discharge or release in this way, or otherwise.   If there were, that would be an issue of fact, to be tried by the jury.   The question is of loss or destruction under circumstances free from fraud, and is a mere "incidental question, addressed to the Court, and does not affect the issue to be tried by the jury."   Tayloe v. Riggs, 1 Pet., 596.

The District Judge held, on the first trial, that "it was not then, or at any time, agreed between the parties, that the notes should be discharged."

On the second trial, the Judge held that the preliminary affidavits "were sufficient to account for their non-production on the trial, and to lay a foundation for secondary evidence."

On this trial, a new ruling is had, differing from all the former rulings of the same Court, of the Supreme Court, and of all other Courts whose decisions are printed.

III. This case is now res adjudicata.

The previous decisions of the Supreme Court, in this case, are the law of this case, and the questions there determined, are not now open for discussion.   Clary v. Hoagland, 6 Cal., 687 ; Gunter v. Laffan, 7 Cal., 592 ; Dewey v. Gray, 2 Cal., 374.

We respectfully submit that the decision of the Supreme Court, on the first appeal, 5 Cal., 500, settled this whole cause.   All the facts found were in favor of the plaintiff by the District Court. The error was in " conclusions of law from the facts found." This entitled the plaintiff to a final judgment.

After the parties " had come to this Court upon a statement agreed upon as containing the facts and evidence of the case, and a judgment had been pronounced," " going to the whole merits of the controversy, it would be exceedingly improper to allow an opportunity to alter or change the facts upon a second trial." Gunter v. Laffan, 7 Cal., 592.

On the second trial, the same precise facts were in evidence, but the jury, under the rulings of the Court, found a verdict for the defendants, which the Court below refused to set aside.

The whole merits of the case were fully before the Court on appeal.   The Supreme Court found that the verdict was so flagrantly and palpably wrong, and contrary to the evidence, that they inferred it to have been the result of " mistake, prejudice, or corruption."   8 Cal., 164.

This decision was conclusive of the plaintiff's right to recover on the merits of the whole action, for everything was before the Supreme Court, and the settled rule is, that if a verdict be such as justice and equity requires, although it be contrary to evidence, yet the Court will not disturb it.   4 T. R., 468; 3 Wils., 273; 2

Ib., 362, 302; Foxcroft v. Devonshire et al., 2 Wm. Blks.; 2 Barr, 936; Graham's Pr., 631; Leigh v. Hodges, 3 Scam., 15; King v. Hill, 2 Taylor, 211; Gillet v. Sweet, 1 Gilm., 475; Nieto v. Carpenter, 7 Cal., 534, 535.

On the third trial and appeal, the same facts were in evidence, and the whole merits of the action were before the Supreme Court, and again the judgment of the District Court reversed, and the plaintiff held to have been entitled to a verdict.

We again, on a fourth appeal, have the same precise facts, the same merits.

On the facts in issue for the jury, if the plaintiff is entitled to prove them, there is no dispute, i. e. the execution and contents of the notes sued on. The bond fully proves all that. The last decision makes this res adjudicata.

The only question remaining, if any does remain, is a question of law on the preliminary facts. On this preliminary question there is no conflict of evidence or contest of facts. It is a mere legal question of the admissibility of the secondary evidence. This, we also contend, is covered by the previous decisions of the Supreme Court.

It is understood now to be the prevailing practice of the Supreme Court, on reversing judgments, to enter the proper judgment where the facts are not disputed, or are beyond contest, and the questions on the record are merely questions of law. And it is respectfully urged that the whole record of this cause on the four appeals, may be looked into by the Court in making its decision.

*Glassel & Leigh* for Respondent.

I. The first alleged error assigned by the counsel for the appellant, is the refusal of the District Court to receive as preliminary evidence the affidavits of the plaintiff and Sinton.

We think the District Court ought to have received neither the affidavit nor the oral testimony of the plaintiff. He could produce a disinterested witness, able and willing to testify to the same facts which he himself would testify to.

In the case of McCann v. Beach, 2 Cal., 30, the Court say: " The peculiar hardship of cases like the present, has given rise to a departure from the rule that no one can be allowed to testify in his own case. Written contracts are generally kept by the parties themselves; and it would be impossible, from the very nature of the case, for them to prove their loss by disinterested witnesses, and to require such proof would, in many cases, amount to a denial of justice. For these reasons, the party is allowed to establish his loss, either by his own oath or that of another." See, also, Phillipps on Evidence, 3 ed., Pt. I, Cowen and Hill's notes, 46, 54; Ib., Pt. I, Cowen and Hill's notes, 404, 409. If, therefore, it appears that a party can produce a disin-

terested witness, able and willing to testify to the same facts to which he himself would testify, if permitted, as fully in all respects as he himself could, the reason of the rule ceases; and *cessante ratione, cessat etiam lex.*

The affidavit of Sinton was a mere voluntary *ex parte* statement, and the defendants had no opportunity to cross-examine him. The rule of the common law is, that no evidence shall be admitted but that which is, or might be, under the examination of both parties. See 2 Phillipps on Evidence, 3 ed., p. 88; Ib., Pt. II, Cowen and Hill's Notes, pp. 136, 409. And although the affidavit of a plaintiff has been recognized as competent to prove the loss or destruction of an instrument, in cases of necessity, a person competent to testify generally in the cause must testify in the ordinary way, in order that the advantage of a cross-examination may be preserved. See Poignard *v.* Smith, 8 Pick., 272, 277.

The error of the Court was, therefore, in receiving the oral testimony of the plaintiff; and as that error was in his favor, he can not complain of it.

It is true, as stated by the counsel for the appellant, that, on the previous trials, the District Court received the affidavits of the plaintiff and Sinton as preliminary evidence. It is wholly immaterial for the purposes of this discussion whether the rulings of the District Court on this or any other point in the case were consistent or inconsistent with its former rulings; the sole question is, whether there was such error in any of the rulings of the Court on the last trial as to entitle the appellant to a reversal of the judgment.

The counsel for the appellant contend that the preliminary testimony of the plaintiff and Sinton is substantially the same as that contained in the affidavits.

If this is so, the error of the District Court in refusing to receive the affidavits alone, if it is an error, is an immaterial one; and the Supreme Court will not reverse a judgment for an immaterial error. If the effect of the oral testimony is not the same as that of the affidavits, the ruling of the District Court was manifestly just and wise. Affidavits are usually drawn up by counsel; and the affiants do not always see the precise force and effect of the words put into their mouths; oral testimony is the witness' own; he uses his own language, explains his precise meaning when required, and is subject to be cross-examined; and the Court or jury can judge from his appearance and demeanor what he means to say, and how much credit to give to it.

II. The second alleged error assigned by the counsel for the plaintiff is, that the Court, after having decided that the preliminary evidence did not justify the admission of secondary evidence of the notes, admitted a paper containing such secondary

evidence, not as secondary evidence, but as pertinent and competent evidence in the cause only.

The reason of the Court for this ruling must have been, that notwithstanding the preliminary evidence, it was possible, in contemplation of law, for the notes stated to have been destroyed to be found, and produced before the evidence was closed; in which event the instrument admitted in evidence would be pertinent and competent, not as secondary evidence, but as proving the execution of the notes, their consideration, and the circumstances under which they were given.

If this was an error, it was an immaterial one. The preliminary evidence did or did not justify the admission of secondary evidence of the notes.

III. The main and, we think, the only question in the case, is this : Did the preliminary evidence entitle the plaintiff to introduce secondary evidence of the notes ?

Taking the testimony of Bagley and Sinton together, and it establishes the following facts : that McMickle owed Bagley and Sinton a large sum of money, for which he had given them his notes; that he was "poor and in difficulties," and had not "the courage" to endeavor to acquire any property while the notes were outstanding; that he therefore wished not only to "keep the notes from getting into the market," but to get them out of the way, to destroy them as evidence against him; and not only the notes, but the only other written evidence of the indebtedness—the bond; that, under these circumstances, he asked Bagley and Sinton to surrender to him both the notes and the bond, to be destroyed by him; that they, believing the notes were worthless, surrendered them to him to be destroyed, but retained the bond as the only evidence, after the destruction of the notes, that the indebtedness existed in any shape; and that the notes were destroyed by McMickle accordingly.

From these facts, it is impossible to resist the conviction that the notes were surrendered by Bagley and Sinton voluntarily and deliberately, without accident or mistake, with the intention that they should be destroyed as evidence—to abandon all claim upon them, and to rely upon the original indebtedness alone as evidenced by the bond.

IV. The destruction of the notes remitted the payees to the original indebtedness.

When the holder of a note, voluntarily and deliberately, without fraud, accident, or mistake, surrenders it to the maker to be destroyed, and it is destroyed accordingly, no action can be maintained upon the note, unless it is shown affirmatively that it was agreed that the rights of the holder should remain the same as if the note continued to exist; but if he, at the time of the surrender and destruction of the note, reserves to himself his rights upon the original indebtedness, he stands in the same

position as if the note had never been made; he may recover upon the original indebtedness, but can not maintain an action upon the note.   Bank of the United States *v.* Sill, 5 Conn. R., 111; Martin *v.* Bank of U. S., 4 Wash. C. C. R., 258.

The case of Garlock *v.* Geortner, (7 Wend., 198,) shows that the surrender of a note by the holder to the maker is *prima facie* evidence of its extinguishment; and that when the note is surrendered with the intention of relinquishing the claim upon it, it ceases to exist as a legal liability, and no action can be maintained upon it.

That, after a willful destruction of a note, when done *bona fide,* without the intention of releasing the debt, but only of destroying the note as evidence of the debt, and, *a fortiori,* when there is an agreement between all the parties that "the destruction shall not vitiate the debt," the holder of the note is remitted to the original consideration, and may recover in an action upon it, is established by the cases of Atkinson *v.* Hawdon, 2 Ad. and Ell., 628 ; 29 Eng. C. L., 169; and Clute *v.* Small, 17 Wend., 238.

In the case of a deed, it is true the cancellation of the deed, even with the intention of revesting the title, will not, in general, have that effect when the property has once passed under it by transmutation of possession.   The reason is, that the title having passed by deed, can be revested only by deed.   There are, however, cases in which an actual cancellation of a deed by which land has passed, will, in effect, revest the title.   In these cases, the cancellation of the deed operates like a reconveyance; although it is not to be considered as such.   The ground upon which the decisions in such cases are put, is that the grantee, having voluntarily and without any misapprehension, consented to the destruction of the deed, with a view to revest the title, neither he nor any person claiming by a title subsequently derived from him, is to be permitted to show the contents of the deed so destroyed by parol evidence.   See Farrar *v.* Farrar, 4 N. Hamp., 191, and Commonwealth *v.* Dudley, 10 Mass., 403.

In the case of a promissory note, the technical rule that that which has been vested by a deed can be divested only by deed, has no application.   But the rule of evidence that he who has voluntarily and deliberately, without misapprehension or mistake, destroyed primary evidence, can not be allowed the benefit of secondary evidence, does apply.   And, *a fortiori,* when a promissory note is voluntarily and deliberately, without fraud, accident, or mistake, surrendered by the holder to the maker, to be by him destroyed, and it is destroyed accordingly, no action can be maintained upon the note, because after such a surrender and destruction of the note, secondary evidence of its execution and contents can not be permitted to be introduced.

We have thus, we think, established :

1. That it was the intention of the parties, in the surrender

10

and destruction of the notes upon which this action is brought, to destroy the notes as evidence, and to remit the holders to the original indebtedness; and that such surrender and destruction were voluntary, deliberate, and without fraud, accident, or mistake; and,

2. That, in consequence of such surrender and destruction of the notes, no secondary evidence of their execution and contents can be permitted to be introduced; and no action upon the notes can be maintained.

If so, the judgment must be affirmed.

The effect of an affirmance, it is true, will be to defeat the claim altogether. But this will be because the Statute of Limitations will bar an action, brought after this lapse of time, upon the original indebtedness. The law of this State makes it the duty of administrators to plead the Statute of Limitations whenever it would be of any benefit to the estate. By discharging that duty, an administrator can subject himself to no just reproach.

FIELD, J., after stating the facts, delivered the opinion of the Court.

The statement of the case exhibits, at the outset, an error in the conclusion of the Court below, from the testimony of the plaintiff and Sinton. There is nothing in their testimony which gives support to the inference that the destruction of the notes was assented to for the purpose of preventing their being used as evidence, but, on the contrary, their testimony plainly imports that the destruction was assented to for the purpose of preventing the negotiation of the notes to third parties, and thus to quiet the apprehensions of the maker that, if they were in the market, they might get into the hands of parties who would attempt, while he was in embarrassed circumstances, to enforce their payment.

Looking, then, to the ruling of the Court, and not to the reason assigned for it, we will proceed to consider the several questions raised by the appeal; and these relate to the admissibility of the affidavits presented; to the sufficiency of the proofs offered as a foundation for the secondary evidence; and to the effect of the destruction of the notes upon the debt arising upon them.

The rule which excludes the testimony of parties, has reference to the matters in issue, and not to incidental questions, involving matters auxiliary to the trial of the cause, which are addressed solely to the Court. Upon these incidental questions, the oath of parties is received, and its admissibility, though generally placed on the ground of necessity to prevent a failure of justice, does not always, or even in the greater number of instances, depend upon that circumstance. Thus, the oath of par-

ties to obtain a continuance, or to take depositions, or to prove the death or absence of a subscribing witness, and in many other instances, is received without reference to the question whether the facts sworn to could be established by the testimony of disinterested witnesses. (1 Greenleaf, 349.) Its admissibility to lay the foundation for secondary evidence of the contents of a written instrument, when the original is kept in a public office, and is not permitted to be taken from it, is not founded upon necessity, for in such cases the custodian of the original could be examined, by deposition, as to the fact that it was not allowed to be removed. (Hensley v. Tarpey, 7 Cal., 288.) And its admissibility, to show the *destruction* of written instruments, can not always be referred to the necessity of the case. It is impossible for any foresight to provide for every development of proof on the trial of a contested cause, and secondary evidence of destroyed instruments may sometimes unexpectedly become necessary. In such contingency, the trial is not delayed, or the evidence excluded, because, possibly, a disinterested witness may be in existence, who can testify to the destruction of the instruments— the testimony of the parties is received, and the trial proceeds. Whatever may have been the reason originally assigned, the true ground upon which the testimony of parties is admitted, to prove the destruction of written instruments, is this : that the testimony relates to matters preliminary and incidental, is addressed solely to the Court, and does not affect the issue to be tried by the jury. Upon such matters, the rule as to the incompetency of parties and interested persons does not apply. The testimony proves nothing in the cause ; it only prepares the way for the introduction of proof. The existence and contents of the instruments must be established by distinct and competent evidence.

That the preliminary· testimony of the parties may be presented by affidavit, is too well settled to admit of question. (Cowen & Hill's Notes, Part II, 408, and cases there cited; Tayloe v. Riggs, 9 Wheat., 483; Wells v. Martin, 1 Ohio State Rep., 389.) Indeed, in several States, it is held the better practice to require the testimony to be given in this manner. Thus, in Smith v. Wilson, (1 Dev. & Bat., 41,) the Supreme Court of North Carolina, after stating that the affidavit of parties to the loss or destruction of original instruments has invariably been received, observes that the testimony is addressed to the Court, and, as a matter of practice, " ought to be in writing, that the Court only may hear it." (See Domand v. State Bank of Illinois, 2 Scam., 236.)

In this State, the testimony may be given orally or offered by affidavit. The convenience of the parties and of the Court will sometimes suggest one course, and sometimes another. Either course may be adopted, and either course will avail. (McCann

v. Beach, 2 Cal., 31; Grass Valley Quartz Mining Co. v. Stack-house, 6 Cal., 414; Gordon v. Searing, 8 Cal., 49.)

We are referred to the case of Poignard v. Smith, (8 Pick., 277,) as authority against the admission of the affidavit of Sinton, for the reason that he was a competent witness in the cause. The decision in that case, and the objection in this, both proceed upon the position that the preliminary evidence of the party is admitted only from necessity. As we place the admissibility of such evidence on other grounds, we can see no reason why the competency of Sinton as a witness should render his affidavit improper for the consideration of the Court, in connection with the affidavit of the plaintiff.

It follows, from the views we have taken, that the affidavits of the plaintiff and Sinton were admissible for the purposes for which they were offered. At the same time, we are of opinion that it was within the discretion of the Court, after hearing the affidavits, to require the oral examination of the parties, as they were present at the trial, in relation to the facts and circumstances detailed by them.

The preliminary testimony was sufficient, beyond question, to authorize the admission of the secondary evidence. It established the fact of destruction, and that it was assented to upon the impression and understanding that the liability of the maker upon the notes would not be affected thereby. The retention of the bond or contract, which describes the notes, repels all suspicion of any design to suppress, by their destruction, evidence of their contents, and thus to produce injury to the maker, or to perpetrate a fraud upon him.

In our former opinion in this case, (Bagley v. McMickle, 9 Cal., 447,) we held that where written instruments are voluntarily and deliberately destroyed, the cause or motive of the destruction is the controlling fact, which must determine the admissibility of secondary evidence of their contents, and that if the destruction was made upon an erroneous impression of its effect, under circumstances free from suspicion of intended fraud, such evidence is admissible. The opinion then expressed is in accordance with all the authorities, and is decisive of the question on the present appeal. (Riggs v. Tayloe, 9 Wheat., 483; U. S. Bank v. Sill, 5 Conn., 106; Renner v. Bank of Columbia, 9 Wheat., 581; Proprietor of Baintree v. Battles, 6 Vt., 399; 4 Cowen & Hill's Notes to Phillipps, No. 247.)

The destruction of the notes in no respect impaired the liability of the maker, or the right of the plaintiff to recover upon them. The right of action upon a contract in writing is not barred by the Statute of Limitations until the lapse of four years after it has accrued. (Statute, § 17.) The fact that the contract was in writing, and not the present existence of the writing, determines the period within which the action must be brought.

The highest evidence of that fact is, of course, the writing itself; but, in case of its loss or destruction, the fact may be established by parol. The destruction of the notes, then, only impaired the evidence of the liability of the maker. "A bill or note," says the Supreme Court of Connecticut, "is not a debt; it is only primary evidence of a debt; and when this is lost or destroyed, *bona fide,* it may be supplied by secondary evidence." (U. S. Bank *v.* Sill, 5 Conn., 106; Martin *v.* Bank U. S., 4 Wash. Cir. Ct. Rep., 253.)

It follows, from the views we have taken, that the judgment below must be reversed; and we are requested to direct the entry of a judgment in favor of the plaintiff. It is urged, in support of the request, that this is the fourth appeal upon substantially the same facts, upon which this Court has each time adjudged that the plaintiff was entitled to recover. It has been a matter of surprise to us that a case so simple in its character, involving no questions of difficulty, should so often be the subject of appeal; but it is impossible for us to say that the defendants might not have made some defence on the trial had the ruling of the Court below been different. It is not our practice to direct the entry of a judgment in the Court below, in actions at law, except where the facts have been found by the Judge who tried the cause, or by the special verdict of a jury, or where, from the character of the action or pleadings, one of the parties is entitled to judgment without proof.

Judgment reversed, and cause remanded.

TERRY, C. J.—I concur, on the ground that plaintiff having declared on promissory notes was only required to prove their due execution, and their rejection by the administrator of McMickle, in order to establish *prima facie* his right to a verdict.

The bond containing a description of the notes, which was admitted as *competent evidence, pertinent* to the issue, and the evidence of the due presentation of the claim, and its rejection by the defendants, was sufficient for this purpose, and the nonsuit was improperly granted.